The issue presented in this case is whether summary judgment was properly entered in favor of the defendant, Mississippi Valley Title Insurance Company ("Mississippi Valley"), with respect to the fraud claims that were made by the plaintiffs, Carl Stafford, Faith Stafford, Harold Walters, and Jacqueline Walters.[1] We affirm in part, reverse in part, and remand.
In 1982, Carl Stafford and his wife, Faith, contracted to purchase a house in Mobile from John George, Jr., and his wife, Merle George. The house is located on a lot that is approximately 660 feet from the nearest public road, U.S. Highway 90; the lot is landlocked except for a 30-foot-wide dirt road that traverses property owned by O.D. Dickerson and his wife, Mildred Dickerson, and connects the lot to the highway. The Georges agreed, among other things, to give the Staffords a warranty deed that conveyed the house and the lot as well as an easement over the dirt road, and to purchase a title insurance policy for the Staffords from Mississippi Valley, through Title Guaranty and Abstract Company of Mobile ("Title Guaranty").[2] Title Guaranty acted as the "settlement agent" at the closing, which was conducted by an employee of Title Guaranty, with the assistance of Sidney Harrell, an attorney who had been approved by Mississippi Valley. The Staffords were given a warranty deed pursuant to their agreement with the Georges; however, they were not shown or given a copy of a commitment for title insurance that had been issued by Mississippi Valley acknowledging that a "conflict of title" had been found with respect to the property during an examination of the probate records, and setting out certain requirements that needed to be met in order to facilitate the issuance of a policy. A policy was not issued until approximately six years later.
In 1984, the Staffords, suffering financial difficulties, were forced to convey the property to Faith Stafford's parents, Harold and Jacqueline Walters. The Staffords continued to live on the property. The deed from the Staffords to the Walterses also recites the conveyance of an easement over the dirt road. In April or May 1987, O.D. Dickerson obstructed the dirt road with a fence, disputing the Walterses' claim to an easement, and, thereafter, refused to remove it. After hiring an attorney, who investigated the matter, the Staffords and the Walterses learned of the title problems that had been found and acknowledged by Mississippi Valley in 1982. After being notified of the problem by the plaintiffs' attorney and being apprised of possible litigation, Mississippi Valley accepted liability for closing the sale without satisfying the requirements that had been set out in the commitment, and issued a policy in 1988, effective retroactively to 1982, insuring against any defect in the title;
On September 12, 1988, the Staffords and the Walterses filed suit, alleging that Mississippi Valley, through its authorized agents, had intentionally or recklessly misrepresented to them that title to the property was clear, giving a cause of action pursuant to Ala. Code 1975, § 6-5-101; that Mississippi Valley, through its authorized agents, had concealed material information from them concerning the state of the title *Page 722 
to the property, giving a cause of action pursuant to Ala. Code 1975, § 6-5-102; and that Mississippi Valley, through its authorized agents, had promised them that they would receive a clear title and that they would be provided with a policy insuring the title to the property, without any intention of keeping those promises, giving a cause of action pursuant to Ala. Code 1975, § 6-5-104(b)(4).
Summary judgment was proper in this case if there was no genuine issue of material fact and Mississippi Valley was entitled to a judgment as a matter of law. Rule 56, A.R.Civ.P. The burden was on Mississippi Valley to make a prima facie showing that no genuine issue of material fact existed and that it was entitled to a judgment as a matter of law. If that showing was made, then the burden shifted to the plaintiffs to present evidence creating a genuine issue of material fact, so as to avoid the entry of a judgment against them. Dupont v.Yellow Cab Co. of Birmingham, Inc., 565 So.2d 190 (Ala. 1990). In determining whether there was a genuine issue of material fact, this Court must view the evidence in a light most favorable to the plaintiffs and must resolve all reasonable doubts against Mississippi Valley. Because this action was not pending on June 11, 1987, the applicable standard of review is the "substantial evidence" rule. Ala. Code 1975, § 12-21-12. "Substantial evidence" is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989).
After examining various depositions, affidavits, and exhibits, the trial court entered a summary judgment, without stating its reasons for doing so. The plaintiffs argue that the trial court erroneously determined that their fraud claims were barred by the applicable statute of limitations. Mississippi Valley argues that the plaintiffs' claims were barred by the statute of limitations and, therefore, that the summary judgment was proper.[3] We note that even if we cannot ascertain from the record the grounds upon which the trial court entered its judgment, if the judgment is correct it is due to be affirmed. Davison v. Lowery, 526 So.2d 2 (Ala.), cert. denied,488 U.S. 854, 109 S.Ct. 140, 102 L.Ed.2d 113 (1988).
Initially, we note that it is undisputed in the record that no one connected with the closing made any representations or promises to, or concealed any information from, the Walterses concerning the state of the title to the property. The Staffords' conveyance to the Walterses occurred approximately two years after the transaction that forms the basis of this suit. If a fraud was committed, it was committed against the Staffords.
The evidence, viewed in a light most favorable to the Staffords, shows that Title Guaranty acted as the "settlement agent" at the closing; that an employee of Title Guaranty, with the assistance of an attorney who had been approved by Mississippi Valley, conducted the closing; that the Staffords were told by the attorney that title to the property was clear, or that it would be made clear, and that they would receive a policy insuring the title to the property;[4] that it was the practice of Mississippi *Page 723 
Valley to issue policies within a reasonable time; that the Staffords never received a copy of the commitment and were never informed by anyone connected with the closing of any problems concerning the state of the title until those problems later surfaced; that subsequent to the closing, the requirements set out in the commitment were never satisfied; and that a policy was not issued until approximately *Page 724 
six years after the closing, when the problems with the title began to surface and litigation became imminent.
Unless, as Mississippi Valley contends, the applicable statute of limitations was a bar, the summary judgment was not proper with respect to the Staffords' claims for intentional or reckless misrepresentation under § 6-5-101 (i.e., that Mississippi Valley, through Title Guaranty, had intentionally or recklessly misrepresented to them that title to the property was clear); for concealment of material information under §6-5-102 (i.e., that Mississippi Valley, through Title Guaranty, had concealed the cloud on the title); and for promissory fraud under § 6-5-104(b)(4) (i.e., that Mississippi Valley, through Title Guaranty, had promised them that they would receive a clear title and that they would be provided with a policy insuring the title). Again, the evidence, viewed in a light most favorable to the Staffords, shows that the Staffords were told at the closing that title to the property was clear, or that it would be made clear, and that they would receive a policy insuring the title. The evidence requires that the trier of fact determine exactly what was said to the Staffords at the closing. If the trier of fact finds that the Staffords were told that title to the property was clear, then it must also determine whether that false representation was recklessly or intentionally made. If the trier of fact finds that the Staffords were told that title to the property would be made clear and that a policy insuring the title would be issued, then it must also determine whether those promises were made with an intent to deceive. Benetton Services Corp. v. Benedot,Inc., 551 So.2d 295 (Ala. 1989). With regard to the Staffords' claim alleging concealment of material information, the evidence was sufficient to show that, under the circumstances, the Staffords should have been informed of the cloud on the title — that information being material to their decision to go forward with the purchase. See, e.g., Deupree v. Butner,522 So.2d 242 (Ala. 1988).
Effective January 9, 1985, the Legislature repealed Ala. Code 1975, § 6-2-39, the one-year statute of limitations applicable to fraud actions, and transferred the one-year actions to §6-2-38, the two-year statute, and amended § 6-2-3, the "saving clause," to recognize that fraud actions were thenceforth required to be filed within two years of the accrual of the cause of action.[5] See Watson v. Trail Pontiac, Inc.,508 So.2d 262 (Ala. 1987). Under § 6-2-3, a claim for fraud is considered as having accrued at the time of "the discovery by the aggrieved party of the fact constituting the fraud." Fraud is "discovered" when it ought to or should have been discovered. Thus, the time of "discovery" is the time at which the party actually discovered the fraud, or had facts that, upon closer examination, would have led to the discovery of the fraud.Lader v. Lowder Realty Better Homes Gardens, 512 So.2d 1331
(Ala. 1987). Thus, whether the Staffords' claims were barred by the two-year statute of limitations depends upon when the Staffords actually discovered the fraud or when they had facts before them that, upon closer examination, would have led them to discover the fraud. After carefully reviewing the record, we conclude that a fact question exists as to when the Staffords "discovered" the fraud. The evidence, viewed in a light most favorable to the Staffords, shows that the Staffords never received a copy of the commitment for title insurance and that no one connected with the closing ever informed them that there were problems with the title until after Dickerson disputed the Walterses' claims to an easement over the dirt road in April or May 1987 and an investigation was commenced by the Staffords' attorney. We disagree with Mississippi Valley's contention that Mr. Dickerson's refusal in 1983 or 1984 to allow the Staffords to dig a ditch on one side of the dirt road constituted notice to the Staffords that he disputed their right to use the road as a means of ingress to and egress from their lot and, thus, constituted notice that a fraud might have been committed at the time of the closing with respect to the state of the title to their property. Mr. Stafford testified that he knew that Dickerson owned the fee *Page 725 
simple title to the property over which the dirt road ran and that he thought that Dickerson had the right to prohibit him from physically altering it. Mr. Stafford further testified that at one point Dickerson suggested to him that he put a layer of flagstone on the road in order to improve it.[6]
Dickerson never blocked the road prior to April or May 1987, and he never attempted to prohibit the Staffords from using it. Suffice it to say that there is evidence from which it can be reasonably inferred that the Staffords did not have facts before them until April or May 1987, when Dickerson blocked the road, that would, as a matter of law, have apprised them of a possible fraud in connection with their purchase of the property. Our conclusion in this regard is simply a recognition that the fact that the question of when a party actually discovered or should have discovered the existence of a fraud is ordinarily one for the trier of fact. Davis v. Brown,513 So.2d 1001 (Ala. 1987). The Staffords filed their suit on September 12, 1988; therefore, Mississippi Valley was not entitled to a judgment as a matter of law on the Staffords' claims on the ground that the two-year statute of limitations had run.
For the foregoing reasons, the judgment is affirmed as to the Walterses; however, it is reversed as to the Staffords' claims against Mississippi Valley, and the case is remanded for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and MADDOX, JONES, ADAMS and STEAGALL, JJ., concur.
[1] The record shows that other claims remain pending against Mississippi Valley; however, the trial court's judgment with respect to the fraud claims was certified as final pursuant to Rule 54(b), A.R.Civ.P.
[2] Title Guaranty later changed its name to Mississippi Valley Title of Mobile, Inc., and, thereafter, merged with Mississippi Valley, which assumed all of its assets and liabilities.
[3] Mississippi Valley also maintains that the Staffords were conveyed a good title and that it has now taken legal action to establish a good chain of title for the record. However, as our discussion will show, this has no bearing upon our decision with regard to the propriety of the summary judgment.
[4] Carl Stafford's deposition testimony reads, in pertinent part, as follows:
"Q. But at the closing you signed some papers?
"A. Uh-huh.
"Q. And that was basically it?
 "A. He [Sidney Harrell] went over the contract to see what — I didn't understand. I never bought a house. So he went over it basically with us to tell us.
"Q. Tell me what you remember that he said.
 "A. Well, that we were entering into an agreement to pay said amount of money. Now the real estate broker had informed me about the title insurance.
"Q. Right.
 "A. I didn't understand what insurance — I was selling life insurance over in New Orleans. So insurance, when it came up, I wondered what it was. He said it was to search the title to guarantee that we had a clean title or we'd get a clean title. And so when we were going back over the contract at that time, he showed where Mr. George was going to purchase the title insurance.
 "Q. Right. Was Mr. Cain [the real estate broker] with you at the closing or not?
"A. No.
". . . .
 "Q. Okay. Now, let's go back to Title Guaranty. What did Mr. Harrell tell you, if anything, about the title insurance.
 "A. Well, Mr. Cain had explained to me what title insurance was.
"Q. I understand.
 "A. So when Mr. Harrell went down the list and showed me title insurance, I already understood what it meant to me and that was that they were insuring — they were going to check the title and be sure that it was good.
 "Q. He showed you where Mr. George was going to pay the money to them, $269, $269.50; right?
"A. Right.
 "Q. Is that basically all he told you is that here is where Mr. George is going to pay for the policy?
"A. Uh-huh.
"Q. Did he tell you anything else?
"A. That that was to insure a clear title, a clean title.
"Q. Tell me exactly what he said about that.
". . . .
"A. Well, I understood it from Mr. Cain what it was.
"Q. I understand.
 "A. So when he said this is the title insurance, I agreed with him, because I understood. He said this is to insure a good title. That was basically it.
 "Q. There's a difference between saying this is the title insurance and this is to insure a clean title. If he said — or did he say, Mr. George is paying for your title insurance policy —
"A. Uh-huh.
 "Q. — you'll have a title insurance policy. What did he say exactly?
". . . .
 "A. Like I said, I understood what it meant to me. And that was . . .
". . . .
 "A. All he said is here is the title insurance that Mr. George is going to purchase to insure a clear title.
"Q. That's fine.
"A. To the property.
". . . .
 "Q. Okay. I thought I just asked you who represented that you would receive clear title to the property and you said Mr. Cain.
 "A. Well, right. That answer was — that answered that question when he said that.
 "Q. Did he say you will receive a title insurance policy —
"A. Uh-huh.
"Q. — that will insure —
"A. That I have a clear title.
"Q. — title to your property?
"A. Right.
"Q. Right?
"A. Right.
 "Q. Who and when did anyone from Title Guaranty represent that to you?
". . . .
"Q. Other than Sid Harrell.
"A. No one.
 "Q. No one. Okay. And Sid Harrell represented that you would receive a policy of title insurance; correct?
"A. Right.
"Q. Insuring the title; correct?
"A. Right.
 "Q. Did you not so in fact receive a policy insuring the title?
"A. No.
"Q. All right.
"A. Not until —
"Q. Not until 1988; right? But [you] have one now?
"A. Uh-huh.
 "Q. Okay. Exactly. You have a policy of title insurance insuring the title to your property; right?
"A. Uh-huh.
 "Q. Then tell me what was untrue about the statement that Mr. Harrell made to you.
 ". . . . "A. That I would receive it?
 "Q. Yes, sir. And that your property would be insured, which it now is.
 "A. It took a lawyer to finally do it for us. Nothing was about what he said.
"Q. Run that back by me. What he said was true.
"A. Yes.
 "Q. You have the policy and the property is now insured; is that correct?
". . . .
 "A. No, sir. That's — as far as him saying we would get one, yes, we did receive one.
 "Q. Okay. So did he say anything else? I mean, really I'm just trying to find out. I wasn't there. You were there. I'm trying to get you to tell me what he said.
"A. I mean, that's basically it. That's it.
"Q. Okay."
[5] See Ala. Acts 1984-85, Act No. 85-39.
[6] This testimony appeared in an affidavit that is challenged by Mississippi Valley as being a belated attempt by the Staffords to create an issue of fact by contradicting, without explanation, previous deposition testimony that was given by Carl Stafford. See Robinson v. Hank Roberts, Inc.,514 So.2d 958 (Ala. 1987). As we view the record, Carl Stafford's affidavit testimony did not contradict his prior deposition testimony, but, instead, merely explained or supplemented it. Even assuming, however, that Carl Stafford's affidavit did, without explanation, contradict his prior deposition testimony and, thus, should not have been considered, our conclusion that a fact question exists as to when the Staffords discovered the fraud would not be affected.