The plaintiff, Gennie D. Badie, appeals from a summary judgment in favor of the defendant, First Capital Mortgage Corporation ("First Capital"), in this action to recover damages for breach of contract, negligent procurement of insurance, and fraud. We affirm.
The parties stipulated to the following facts:
 "Thomas Earl Badie and his wife, Gennie D. Badie, applied for a loan from First Capital . . . in the amount of $26,000.00. This loan was to be secured by a mortgage on their home and property located at Old Highway 22 in Plantersville, Dallas County, Alabama.
 "The loan to the Badies was closed on February 11, 1988, at which time the Badies executed a . . . statement [pursuant to the Federal Truth-in-Lending Act, Tit. I, Consumer Protection Credit Act, as amended, 15 U.S.C. § 1601 et seq.,] which disclosed all items as required under the federal truth-in-lending laws.
 "Contained within the truth-in-lending disclosure statement was a place for the borrower to request credit life insurance to cover the amount of the loan. Prior to closing, Mr. and Mrs. Badie requested [that] this loan be covered by credit life insurance in the amount of $26,000.00 and the disclosure statement was prepared accordingly.
 "At the closing . . ., the Badies also executed a document acknowledging their right to cancel or rescind the loan agreement at any time within three (3) business days from the date of the transaction.
 "First Capital . . . agreed to obtain credit life insurance for the amount of the loan proceeds which [it] planned to do through a master policy which had been issued to [it] by an insurance company. First Capital . . . did not obtain the credit life insurance on the day of the closing. [Thomas Earl] Badie was insurable at the time of the closing.
 "First Capital . . . was informed that . . . Thomas Earl Badie died during the three (3) day rescission period and did not disburse the loan proceeds."
Although the parties did not so stipulate, it appears to be undisputed that the premium for the credit life insurance was to be deducted and paid from the loan proceeds and that, pursuant to its standard operating procedures, First Capital conditioned its agreement to use a portion of the loan proceeds to pay for the insurance on its first receiving an affidavit from the plaintiff and her husband at the end of the three-day period following the loan closing confirming that they had not exercised *Page 193 
their option to cancel the loan. No such affidavit was received by First Capital.
Summary judgment was proper in this case if there was no genuine issue of material fact and First Capital was entitled to a judgment as a matter of law. Rule 56, A.R.Civ.P. The burden was on First Capital to make a prima facie showing that no genuine issue of material fact existed and that it was entitled to a judgment as a matter of law. If it made that showing, then the burden shifted to the plaintiff to present evidence creating a genuine issue of material fact, so as to avoid the entry of a judgment against her. In determining whether there was a genuine issue of material fact, this Court must view the evidence in a light most favorable to the plaintiff, the nonmoving party, and must resolve all reasonable doubts against First Capital. Because this action was not pending on June 11, 1987, the applicable standard of review is the "substantial evidence" rule. Ala. Code 1975, § 12-21-12. SeeStafford v. Mississippi Valley Title Ins. Co., 569 So.2d 720
(Ala. 1990).
The plaintiff contends that the summary judgment on her breach of contract and negligent procurement of insurance claims was improper because, she says, a genuine issue of material fact existed as to whether First Capital agreed to have a credit life insurance policy on her husband in effect on the date of the loan closing.[1] She contends that the summary judgment on her fraud claim was improper because, she says, a genuine issue of material fact existed as to whether First Capital falsely represented to her at the closing that credit life insurance on her husband was in effect.
First Capital contends that the plaintiff neither alleged, nor submitted any evidence tending to show, that it agreed to have a credit life insurance policy on her husband in effect on the date of the closing. It argues that it was expressly prohibited by law from purchasing the insurance within the three-day rescission period and that, because the plaintiff's husband died within that period, it was entitled to a judgment as a matter of law on the breach of contract and negligent procurement of insurance claims. First Capital also argues that the summary judgment on the fraud claim was proper because, it says, the plaintiff neither alleged, nor submitted any evidence tending to show, that it made a false representation at the closing concerning the effective date of the credit life insurance.
For the following reasons, we agree with First Capital that it was entitled to a judgment as a matter of law on all three of the plaintiff's claims.
Count two of the plaintiff's complaint reads, in pertinent part, as follows:
 "Plaintiff . . . alleges that the [defendant] promised to secure the Plaintiff a life insurance policy with the face value of Twenty-six Thousand ($26,000.00) Dollars.
 "The Plaintiff further claims that the [defendant] negligently failed to obtain the life insurance policy for Twenty-six Thousand ($26,000.00) Dollars and that as a proximate consequence of the [defendant's] aforestated negligence or breach of contract, the Plaintiff suffered the following injuries and damages, to-wit:
 "That upon the death of Thomas Earl Badie he was not insured for the Twenty-six Thousand ($26,000.00) Dollars agreed upon, and Gennie D. Badie and the estate of Thomas Earl Badie have suffered damages in the amount of Twenty-six Thousand ($26,000.00) Dollars, emotional distress and anguish, and further the [plaintiff claims] punitive damages."
(Emphasis added.)
As Count two of her complaint shows, the plaintiff alleged only that First Capital "promised to secure . . . a life insurance *Page 194 
policy." She did not allege that First Capital agreed to have a policy in effect on the date of the closing. First Capital stipulated that it agreed to purchase credit life insurance on the plaintiff's husband. First Capital correctly points out, however, that it was prohibited by 12 C.F.R. § 226.23(c) from using any of the loan proceeds within the three-day rescission period to purchase the insurance. Section 226.23(c), which is part of Regulation Z, issued by the Board of Governors of the Federal Reserve System to implement the Federal Truth-in-Lending Act, provides, in pertinent part, as follows:
 "Delay of creditor's performance. Unless a consumer waives the right of rescission . . ., no money shall be disbursed [by the creditor] other than in escrow, no services shall be performed and no materials delivered until the rescission period has expired and the creditor is reasonably satisfied that the consumer has not rescinded."
First Capital submitted evidence, which was not rebutted by the plaintiff, that its agreement to use a portion of the loan proceeds to pay the premium for the insurance was conditioned on its first receiving an affidavit from the plaintiff and her husband confirming that they had not exercised their right of rescission within the three-day period following the loan closing. Consequently, the undisputed facts showed that First Capital was under no obligation to have a life insurance policy on the plaintiff's husband in effect during the rescission period.
Because the undisputed facts showed that First Capital was under no contractual duty to have credit life insurance on the plaintiff's husband in effect during the three-day rescission period, First Capital was entitled to a judgment as a matter of law on the breach of contract claim. Likewise, because the undisputed facts also showed that First Capital was expressly prohibited under the law from purchasing the insurance within the three-day rescission period, a judgment as a matter of law was proper on the negligent procurement of insurance claim.
Count four of the plaintiff's complaint reads, in pertinent part, as follows:
 "On or about the 11th day of February, 1988, the [plaintiff] and [defendant] were negotiating concerning the [plaintiff's] borrowing money from the [defendant] and issuance of a life insurance policy insuring the life of Thomas Earl Badie. The [defendant] . . . represented that the life of Thomas Earl Badie would be adequately insured with at least Twenty-six Thousand ($26,000.00) Dollars insurance.
 "The Plaintiff, Gennie D. Badie, relied upon the [defendant's] representation and executed a mortgage [and a] promissory note and did not obtain insurance or financing from any other entity.
 "The [defendant's] representations were false and the [defendant knew] they were false or made them recklessly or made them innocently with the intention that the [plaintiff] would rely upon them."
(Emphasis added.)
As Count four of her complaint shows, the plaintiff alleged only that First Capital represented to her that "the life of Thomas Earl Badie would be adequately insured" and that that representation was false. She did not allege that First Capital represented to her at the closing that credit life insurance on her husband was in effect. As previously noted, First Capital stipulated that it agreed to purchase the insurance. Also, as previously noted, First Capital submitted evidence, which was not rebutted by the plaintiff, that its agreement to use a portion of the loan proceeds to pay the premium for the insurance was conditioned on its first receiving an affidavit from the plaintiff and her husband confirming that they had not exercised their right of rescission within the three-day period following the loan closing. Because the plaintiff neither alleged nor submitted any evidence tending to show that First Capital made a false representation concerning the effective date of the credit life insurance (i.e., that First Capital did not intend to obtain the insurance after the rescission period), the summary judgment on the *Page 195 
fraud claim was proper. See Benetton Services v. Benedot, Inc.,551 So.2d 295 (Ala. 1989), where this Court reiterated the well-established rule that if a fraud claim is based upon a promise to perform an act in the future, the plaintiff must prove that the promisor, at the time the promise was made, did not intend to perform.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES, STEAGALL, KENNEDY and INGRAM, JJ., concur.
[1] First Capital rescinded the loan agreement upon learning of the death of the plaintiff's husband, relieving the plaintiff of any liability under the note that she had executed at the closing. The plaintiff also sued First Capital for breach of contract in connection with its failure to disburse the loan proceeds to her. Summary judgment was entered in favor of First Capital on that claim; however, the plaintiff does not contest that aspect of the judgment on this appeal.