Harry P. Hoover sued Craig Tuttle; James Mullens;[1] Albert Wright; and American Legion Buford D. Byrom Post 176, Inc. ("the Post"); alleging, in pertinent part, that the defendants had defamed him and had invaded his privacy, and that the defendants had conspired to defame him and to invade his privacy. The trial court entered a summary judgment for the defendants. Hoover appealed. We affirm in part, reverse in part, and remand.
The summary judgment was proper in this case if there was no genuine issue of material fact and the defendants were entitled to a judgment as a matter of law. Rule 56, A.R.Civ.P. The burden was on the defendants to make a prima facie showing that no genuine issue of material fact existed and that they were entitled to a judgment as a matter of law. If that showing was made, then the burden shifted to Hoover to present evidence creating a genuine issue of material fact, so as to avoid the entry of a judgment against him. In determining whether there was a genuine issue of material fact, we must view the evidence in a light most favorable to Hoover and must resolve all reasonable doubts against the defendants. Stafford v.Mississippi Valley Title Ins. Co., 569 So.2d 720 (Ala. 1990). Because this case was not pending on June 11, 1987, the applicable standard of review is the "substantial evidence" rule. Ala. Code 1975, § 12-21-12.
The evidence in this case, viewed in a light most favorable to Hoover, shows that Tuttle, Mullens, and Wright were members of the Post's executive committee, which was responsible for, among other things, evaluating and voting on applications for the Post's vacant club manager position. Hoover applied for that position and submitted a résumé. His application was rejected, however, during a committee meeting at which Wright's wife, a less qualified applicant, was hired. Hoover submitted the following affidavit of another member of the executive committee, Frank Harris, as evidence of what occurred during that meeting:
 "On 5 June 1990, at the regular executive meeting, we were discussing résumés for the manager position within the Post. Mr. James Daily, Chairman of the Resume Review Committee, discussed the abilities of those who were the most qualified to fill the manager's position. One by one they were turned down for one reason or another. Of all the résumés received, one was outstanding and Mr. James Daily went over his qualifications and recommended he be considered by the Board. The candidate was Harry P. Hoover, who is a retired military person with 28 years in food and beverage management, 18 years in military clubs, and 10 years in country clubs.
 "When Mr. Daily finished with his qualifications, Mr. Craig Tuttle, past *Page 292 
Post Commander (now Adjutant) stated that Hoover had received a dishonorable discharge from the service. Then James I. Mullens, Service Officer, said yes, that he had guarded him and escorted him around the base. Immediately, Mr. Albert Wright, 3 year trustee, spoke up and stated, yes, he [Hoover] was involved with MSGT Higgnuts. (The NCO who was under congressional investigation for stealing millions of dollars from the Army NCO clubs in the 1960s (thereabout)).
 "I stated [that] if this was true we could not consider him for the position. His application was set aside. With this action, there was only one application left to review. The applicant was Elizabeth Wright, who is the wife of Albert Wright (3 year trustee), and of course, was voted in as manager. She had no outstanding qualifications and occupied the position of Assistant Manager for several years.
 "I had also been appointed a member on the Review Committee and after the meetings, I began thinking about everything that had been said during the meeting. I had read Mr. Hoover's résumé and I remembered he had retired from the Air Force and could not have been involved with this Army scandal. I called Mr. Daily for his copy of Hoover's résumé, which he delivered the next day.
 "After re-reading Hoover's résumé, I was convinced that they had deliberately lied about Mr. Hoover to get Albert Wright's wife in as manager. . . .
 "On or about 11 June 1990, I called Mr. Hoover but received no answer. I called again on the 15th of June and was told he was out and to call again tomorrow. I never had a chance to call him until the 19th or 20th of June, 1990. I told Mr. Hoover who I was and told him of the incident regarding his résumé and what three of the officers had to say about him receiving a dishonorable discharge when his name was recommended for consideration for Post Manager. Mr. Hoover stated these accusations were false and that he would take legal action if necessary. . . ."
Tuttle, Mullens, and Wright denied making any defamatory comments concerning Hoover's military service record.
In Phillips v. Smalley Maintenance Services, Inc.,435 So.2d 705, 708 (Ala. 1983), this Court noted:
 "It is generally accepted that the invasion of privacy tort consists of four distinct wrongs: (1) The intrusion upon the plaintiff's physical solitude or seclusion; (2) publicity which violates the ordinary decencies; (3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; and (4) the appropriation of some element of the plaintiff's personality for a commercial use. Norris v. Moskin Stores, Inc., 272 Ala. 174, 132 So.2d 321 (Ala. 1961), citing W. Prosser, Law of Torts, pp. 637-39 (2d ed. 1955)."
The evidence in the present case, even when viewed most favorably toward Hoover, was insufficient to support Hoover's claim of an invasion of his privacy. Hoover submitted a job application and a résumé to the Post's executive committee. The comments of Tuttle, Mullens, and Wright, if made at all, were made in a private meeting of the Post's executive committee. There was no evidence that the actions of Tuttle, Mullens, and Wright constituted an intrusion into Hoover's private concerns, either by physical intrusion or through some other form of investigation or examination. See Phillips, at 710-11. Likewise, there was no evidence that the comments allegedly made by Tuttle, Mullens, and Wright were made outside of the meeting of the executive committee; therefore, Hoover could not have been subjected to publicity that would violate ordinary decencies or that would create a false image of Hoover in the public's eye. Finally, there was no evidence that Tuttle, Mullens, and Wright appropriated some element of Hoover's personality for a commercial purpose. The evidence tends to show only that Tuttle, Mullens, and Wright made false statements to other members of the committee about Hoover's military service for the purpose of discrediting him and, thus, clearing the way for Wright's *Page 293 
wife to be hired for the position of club manager. Therefore, if Hoover has actionable claims against these defendants, they must be based on allegations that Tuttle, Mullens, and Wright defamed him, or conspired to defame him, not based on allegations of an invasion of his privacy or a conspiracy to invade his privacy. See Allied Supply Co. v. Brown,585 So.2d 33 (Ala. 1991); Keith v. Witt Auto Sales, Inc., 578 So.2d 1269
(Ala. 1991) (a conspiracy claim must fail when no actionable wrong exists to support it).
The defendants contend that the summary judgment was proper as to the defamation claim because, they say, the alleged comments were not published. They argue, in the alternative, that even if the comments were published, the summary judgment was proper because they were conditionally privileged. We disagree.
To sustain an action alleging slander, a plaintiff must show that the allegedly defamatory matter was published, by proof that the defamatory matter was communicated to someone other than himself. In other words, there must be a communication of a defamatory matter to a third person. Nelson v. LapeyrouseGrain Corp., 534 So.2d 1085 (Ala. 1988). This Court has held, as the defendants point out, that communications between the managerial personnel of a corporation, if made in the line and scope of their duties as employees of that corporation, do not constitute a publication by either the corporation or the employees of the corporation, under the rule of McDaniel v.Crescent Motors, Inc., 249 Ala. 330, 31 So.2d 343 (1947), andBurney v. Southern Ry., 276 Ala. 637, 165 So.2d 726 (1964). SeeRowe v. Isbell, 599 So.2d 35 (Ala. 1992); Hanson v. NewTechnology, Inc., 594 So.2d 96 (Ala. 1992); Atkins Ford Sales,Inc. v. Royster, 560 So.2d 197 (Ala. 1990); and Nelson v.Lapeyrouse Grain Corp., supra.[2] The evidence in the present case indicates, however, that Tuttle, Mullens, and Wright were not acting pursuant to any duty owed to the Post when they made the alleged comments concerning Hoover's military service record. The duty owed by the members of the committee, as we understand it, was to objectively evaluate the applicants for the vacant position, so that the Post could hire the most qualified person to run the club. Making false statements to other members of the executive committee concerning Hoover's military service record for the purpose of furthering their own agenda (i.e., hiring Wright's wife) would clearly be outside the scope of these defendants' duties within the Post's hiring process. Because there appears to be a fact question as to whether Tuttle, Mullens, and Wright, either individually or in concert, acted outside the scope of their duties to the Post by making false statements concerning Hoover's military service record, the summary judgment for Tuttle, Mullens, and Wright could not have been based on a lack of publication. There was sufficient evidence of publication and of a conspiracy among these individual defendants to defame Hoover to warrant submission of the defamation claims to a jury.
Neither could the summary judgment for Tuttle, Mullens, and Wright have been based on the existence of a conditional privilege. Where a party makes a communication and that communication is prompted by a duty owed either to the public or to a third party, or the communication is one in which the party has an interest and it is made to another having a corresponding interest, the communication is privileged, if it is made in good faith and without actual malice. The duty under which the party is privileged to make the communication need not be one having the force of legal obligation, but it is sufficient if it is social or moral in its nature and the defendant in good faith believes he is acting in pursuance thereof, although in fact he is mistaken. Nelson v. LapeyrouseGrain Corp., at 1094. Again, the evidence in the present case indicates that the comments allegedly made by Tuttle, Mullens, and Wright were not made in good faith. This *Page 294 
evidence (i.e., evidence tending to show that the privilege was abused) precludes the entry of a judgment as a matter of law for Tuttle, Mullens, and Wright based on the existence of a conditional privilege.
The summary judgment for the Post with respect to Hoover's defamation claims was proper. A corporation may be liable for damages to a third person resulting from a conspiracy where two or more of its agents participated in the conspiracy.Williams v. Marcum, 519 So.2d 473 (Ala. 1987). However, if, as Hoover claims, Tuttle, Mullens, and Wright acted outside the line and scope of their duties to the Post by making false statements about him for the purpose of hiring Wright's wife, then the Post could not be held vicariously liable for their comments, whether those comments were made as part of a conspiracy or otherwise. See K-Mart Corp. v. Pendergrass,494 So.2d 600, 604 (Ala. 1986), wherein this Court, quoting Weir v.Brotherhood of Railroad Trainmen, 221 Ala. 494, 498,129 So. 267, 270 (1930), noted:
 "Basic principles of agency law operate within the area of defamation law, of course, and this Court has held that if 'publication is sought to be shown by an agent, it does not bind the principal as a publication . . ., unless the act of such agent was within the line and scope of the agent so acting or employed.' "
For the foregoing reasons, that portion of the judgment for the defendants with respect to Hoover's claims alleging invasion of privacy, and for the Post with respect to Hoover's defamation claims, is affirmed; however, that portion of the judgment for Tuttle, Mullens, and Wright with respect to Hoover's defamation claims is reversed; and the case is remanded for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and MADDOX, SHORES and KENNEDY, JJ., concur.
[1] Mullens died while this case was pending below. The record, although not clear, indicates that Hoover was allowed to substitute Mullens's estate as a defendant.
[2] Although we are aware that the McDaniel-Burney rule has been criticized as confusing the concepts of publication and privilege, see, e.g., W. Prosser, The Law of Torts, § 113 (4th ed. 1971); F. Harper, F. James O. Gray, The Law of Torts, § 5.15 (2d ed. 1986), we are not persuaded that this is the proper case in which to reexamine this rule.