Richard V. Cantrell appeals from a summary judgment for North River Homes, Inc. ("North River"), and Alan West in a defamation suit. We affirm.
Cantrell, Robert L. Brown, Billy Reich, and Tommy Hunter were employed as truck drivers by North River, a mobile home manufacturer. Cantrell's employment was terminated early in 1990. When the drivers delivered mobile homes for North River, each truck was accompanied by one or two escort vehicles, depending on the requirements of the law of the state through which they were driving. The truck drivers would personally pay the drivers of the escort vehicles for their services, and then they would submit the escort tickets to North River, which would reimburse them for their expenses. In January 1990, all four drivers were delivering mobile homes to Tennessee, and each had to pick up a second escort at the Tennessee line. Each driver turned in an escort ticket for $95 after he returned to North River. On January 19, West, a dispatcher for North River, terminated each driver individually, outside the presence of the other drivers. West fired Cantrell and the other drivers, allegedly for charging North River more than each escort was paid and for falsifying the amount that each driver was to be reimbursed on the escort ticket for each Tennessee escort. Cantrell's escort driver, Don Gilley, told West later that day that he had charged Cantrell $95 for the escort service and that the escort ticket submitted by Cantrell was for the amount Gilley had charged Cantrell.
Cantrell filed a claim for unemployment benefits with the Alabama Department of Industrial Relations ("ADIR"). West told an ADIR investigator that Cantrell had falsified the amount on his escort ticket, that the name on the ticket was fictitious, and that the escort service had charged only $70. Cantrell's claim for benefits was initially denied by ADIR on the basis that he had falsified an expense account, a dishonest act that, under § 25-4-78(3)(a), Ala. Code 1975, would have disqualified him from receiving unemployment compensation benefits. Cantrell appealed this ruling. Gilley, Cantrell's escort driver, testified on the appeal that he had charged Cantrell $95 and that he had written another man's name on Cantrell's escort ticket. The ADIR appeals referee reversed the denial of Cantrell's unemployment benefits.
Brown, Cantrell, and Reich sued West and North River for damages for defamation, alleging that West, as an agent of North River, had slandered each plaintiff when he fired him and that West had further slandered each plaintiff when he made accusations to an ADIR interviewer that each plaintiff had committed a dishonest or criminal act in submitting false or forged escort tickets. The defendants moved for a summary judgment, supporting their motion with the pleadings, an affidavit of West, and deposition testimony of Hunter. The trial court entered a summary judgment for the defendants. Cantrell appeals.
A summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P. "In determining if summary judgment is proper, the trial court must view the motion in a light most favorable to the nonmovant, and, in reviewing a summary judgment, this Court is limited to reviewing the factors and evidence considered by the trial court when it granted the motion." Clark v.America's First Credit Union, 585 So.2d 1367, 1369 (Ala. 1991). To defeat the defendants' properly supported *Page 553 
motion for summary judgment, Cantrell must present substantial evidence supporting his defamation claim and creating a genuine issue of material fact. Id.; § 12-21-12, Ala. Code 1975; West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989). Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West, supra, at 871.
Thus, to determine whether a summary judgment was proper, we must examine the evidence in a light most favorable to Cantrell and resolve all reasonable doubts against the defendants, as we are required to do under the applicable standard of review, in order to decide whether Cantrell submitted substantial evidence in support of his defamation claim and thereby created a genuine issue of material fact.
 "To establish a prima facie case of defamation, the plaintiff must show that the defendant[s] published a false and defamatory statement concerning the plaintiff to a third person. Statements made subject to a qualified [or conditional] privilege are not actionable unless the plaintiff can prove that the defendant acted with malice.
". . . .
 ". . . [A] communication may be conditionally privileged if it is one in which the party has an interest, and is made to another having a corresponding interest. More specifically, this Court has held that communications among employees in the course of transacting the company's business and in the proper scope of the employees' duties do not constitute a publication."
Atkins Ford Sales, Inc. v. Royster, 560 So.2d 197, 200-01 (Ala. 1990) (Citations omitted). This rule of "no publication" among employees indicates that there is no publication, and thus no actionable defamation, "[a]s long as a communication to a nonmanagerial employee falls within the proper scope of that employee's knowledge or duties." Nelson v. Lapeyrouse GrainCorp., 534 So.2d 1085, 1093 (Ala. 1988); Hoover v. Tuttle,611 So.2d 290, 193 (Ala. 1992).
Cantrell contends that West slandered him when he told Hunter, after Cantrell had been fired, that the other truck drivers (Cantrell, Reich, and Brown) had "padded" their escort tickets by overstating the amount the escorts had been paid and, apparently, then pocketing the difference. Cantrell argues that any privilege for communications among employees would not apply to West's statement, because Cantrell was no longer an employee of North River when West made this allegedly defamatory statement to Hunter, and because Hunter had been terminated, or was being terminated, at the time of the statement. However, the timing of West's statement to Hunter and of Hunter's (or Cantrell's) termination does not, in this instance, mean that a publication was made to a non-employee. Cantrell and Hunter were both involved in the alleged ticket padding scheme. Whether Hunter was still an employee at the time of West's alleged slander of Cantrell is not significant under the facts of this case, because the statement "was directly related to [Cantrell's] discharge . . . and concerned matters [in which Cantrell and Hunter were involved] allegedly occurring during and in the course of [their] employment." Dixon v. Economy Co., 477 So.2d 353, 354
(Ala. 1985).
The gist of Cantrell's argument is that West's statement to Hunter was an unprivileged publication and, thus, was actionable. "Where a party makes a communication and that . . . communication is one in which the party has an interest and it is made to another having a corresponding interest, the communication is privileged, if it is made in good faith and without actual malice." Hoover v. Tuttle, 611 So.2d 290, 293
(Ala. 1992). Because both Cantrell and Hunter were fired for similar behavior, arising out of the same event when mobile homes were delivered to Tennessee, they had a corresponding interest in West's statements made to the drivers involved in the incident. West's statements were made within the company and only to the drivers involved in the incident. Although the final outcome of Cantrell's appeal to the ADIR on his unemployment benefits claim might cause one to question the validity of West's reason for firing him, there is no evidence that West was acting in bad faith *Page 554 
when he accused Cantrell of acting dishonestly, or when he told Hunter that the other drivers had, in his opinion, padded their tickets. Nor is there evidence of actual malice on the part of West, which could, in this instance, "have been shown 'by [substantial] evidence of previous ill will, hostility, threats, rivalry, other actions, former libels or slanders, and the like, emanating from the defendant, or by the violence of the defendant's language, the mode and extent of the publication, and the like.' " Clark, supra, 585 So.2d at 1371 (quoting Willis v. Demopolis Nursing Home, Inc.,336 So.2d 1117, 1120 (Ala. 1976)); Cole v. Cooper, 437 So.2d 1257, 1258
(Ala. 1983). Therefore, we affirm the summary judgment as to Cantrell's claim of any defamation arising out of West's statements to Hunter.
Cantrell also argues that statements made by West during the ADIR investigation of his unemployment benefits claim and his appeal were slanderous, and that the trial court erred in entering the summary judgment as to his claim based on those statements. Cantrell recognizes Ala. Code 1975, § 25-4-116, which provides in part:
 "All letters, reports, communications and other matters, written or oral, from employer or employee to each other or to the director or any of his agents, representatives or employees, or to any official or board functioning under this chapter, which shall have been written, sent, delivered or made in connection with the requirements and administration of this chapter, shall be absolutely privileged and shall not be made the subject matter or basis for any civil action for slander or libel in any court."
Cantrell also points out that in Cole we raised, but did not decide, the question of "[w]hether [this statutory privilege] is an absolute privilege or merely a qualified one." 437 So.2d at 1258. Cantrell argues that a qualified privilege applies to communications under § 25-4-116, and that, therefore, communications attended by actual malice would not be privileged. Cantrell contends that West acted with ill will or hostility against Cantrell, which would constitute actual malice, and, therefore, he argues that the trial court erred in entering the summary judgment as to his claim based on West's statements made during the ADIR proceedings.
After carefully reviewing the materials submitted in favor of, and those submitted and in opposition to, the summary judgment motion in a light most favorable to Cantrell, we conclude that Cantrell presented no substantial evidence of actual malice by West. "This Court has recognized that disposition of the issue of actual malice by summary judgment is generally inappropriate. Loveless v. Graddick, 295 Ala. 142,325 So.2d 137 (1975). However, where no proof of malice is offered at all, summary judgment is appropriate. Id."; Willis, supra, 336 So.2d at 1120; Gore v. Health-Tex, Inc.,567 So.2d 1307, 1308 (Ala. 1990). Because Cantrell presented no substantial evidence that West's statements were attended by malice, there is no genuine issue on the question of malice and, "therefore, [even] if the statutory privilege is only a qualified one, the [defendants have] carried [their] burden, and summary judgment was proper." Cole, supra, 437 So.2d at 1258. Therefore, we affirm the summary judgment as to Cantrell's claim of defamation arising out of the ADIR proceedings.
AFFIRMED.
HORNSBY, C.J., and MADDOX, HOUSTON and KENNEDY, JJ., concur.