Michael Gene Nickolson, Jr., was an employee of Alabama Power Company; he was killed in a work-related accident when some utility poles fell from a trailer. His wife, Dova Nickolson, as administratrix of his estate, sued the manufacturer of the trailer, Alabama Trailer Company, Inc., and three of Mr. Nickolson's coemployees, Charlie Harris, Nebraska Burnhart, and Fred Howard, alleging that the manufacturer and the coemployees were responsible for causing the accident that killed Mr. Nickolson. On September 13, 1999, Alabama Trailer moved for a summary judgment. The three individual defendants moved for a summary judgment on October 13, 1999. After hearing arguments on the motions for summary judgment, the trial judge granted the motions and entered a summary judgment for the company and a separate summary judgment for the coemployees. Ms. Nickolson appealed. We affirm in part, reverse in part, and remand.
 Facts
Michael Gene Nickolson, Jr., was an apprentice lineman with Alabama Power Company, working in Anniston. He was killed when utility poles rolled off the pole-and-material trailer on which he was working. He was attempting to dislodge a pole tong that had become wedged between two utility poles that he had loaded on the trailer. He fell backwards off the trailer when the utility poles began to roll. One of the poles hit him in the chest, and the blow caused his death.[1]
In her complaint, Ms. Nickolson alleged that Alabama Trailer had negligently or wantonly designed, manufactured, and/or sold the trailer involved in her husband's accident, and that Alabama Trailer's negligent or wanton conduct had proximately caused her husband's death. She also alleged that Alabama Power employees Harris, Burnhart, and Howard had breached a duty to provide her husband with a reasonably safe work environment and that their conduct had proximately caused his death.
 Standard of Review
In determining whether a summary judgment was properly entered, this court applies the "substantial-evidence" rule. Under this rule, once the movant makes a prima facie showing that there is no genuine issue as to any material fact and that he is entitled to a judgment as a matter of law, the nonmovant must introduce substantial evidence to rebut this showing. Warehouse Home Furnishing Distribs., Inc. v. Whitson,709 So.2d 1144 (Ala. 1998). Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870,871 (Ala. 1989). We examine the evidence in the light most favorable to the nonmovant, and we resolve all doubts against the movant. Cantrell v.North River Homes, Inc., 628 So.2d 551, 553 (Ala. 1993).
 Discussion
Ms. Nickolson argues on appeal that the summary judgments were improper because, *Page 929 
she contends, the evidence before the trial court created genuine issues of material fact. See Rule 56(c), Ala.R.Civ.P.
 A. Claims against Alabama Trailer Company
Ms. Nickolson claims that the trailer from which her husband fell was defective and unreasonably dangerous; that Alabama Trailer failed to warn her husband of the dangers associated with the use of the trailer; and thus that Alabama Trailer is liable under the Alabama Extended Manufacturer's Liability Doctrine.
The trailer had been designed by Alabama Power Company. Alabama Trailer assembled the trailer pursuant to Alabama Power's specifications. Alabama Trailer argues that its assembly of the trailer was not "causally related" to the alleged defect because it had no input into the design of the trailer. The trial court held, based on Boyle v. United TechnologiesCorp., 487 U.S. 500 (1988), that a manufacturer, such as Alabama Trailer, who manufactures a product pursuant to specifications of a third party is not liable for defects in that third party's design. Ms. Nickolson argues that the trial court misapplied the law in Boyle by concluding that Alabama Trailer had no legal duty to review Alabama Power's plans and specifications for possible flaws. She says that she seeks to have Alabama Trailer held liable on the basis that it did not act as a responsible contractor in building the trailer. She claims that a trier of fact could reasonably find that Alabama Power overlooked a necessary safety measure (having stanchions inserted in the "bolster dogs"[2] when more than one tier of poles is loaded on the trailer), and that Alabama Trailer should be held liable because it never informed Alabama Power of the dangerous condition that would exist in the trailer as a result of the omission of stanchions.
We have held:
 "`An independent contractor owes no duty to third persons to judge the plans, specifications or instructions which he has merely contracted to follow. If the contractor carefully carries out the specifications provided him, he is justified in relying upon the adequacy of the specifications unless they are so obviously dangerous that no competent contractor would follow them. The rule, as expressed in the oft-cited case of Ryan v. Feeney Sheehan Building Co., [239 N.Y. 43, 46, 145 N.E. 321, 321-22
(1924)], is as follows:
 "`"A builder or contractor is justified in relying upon the plans and specifications which he has contracted to follow, unless they are so apparently defective that an ordinary builder of ordinary prudence would be put upon notice that the work was dangerous and likely to cause injury."'"
McFadden v. Ten-T Corp., 529 So.2d 192, 200 (Ala. 1988). (Citations omitted.) Thus, in order to defeat Alabama Trailer's motion for a summary judgment, Ms. Nickolson had to present substantial evidence indicating that the absence of stanchions made the specifications "so obviously dangerous that no competent contractor would follow them."
Ms. Nickolson submitted expert testimony through the affidavit of Dr. Jeffrey H. Warren, who stated:
 "The plans and specifications used to build the subject trailer are defective in *Page 930 
that they did not provide for stanchions in the bolster dogs. If stanchions had been incorporated in the design and been placed in the bolster dogs, the stanchions would have prevented telephone poles from rolling off the trailer. This incident would not have occurred, and Michael Gene Nickolson would not have been fatally injured if stanchions had been put in the bolster dogs.
 "Based upon my review of the [depositions and other evidence], my education, and my work and professional experience, it is my opinion that a responsible and reasonable trailer manufacturer would have questioned the absence of stanchions in the bolster dogs and would not have followed the plans and specifications without informing the purchaser of this significant defect in the plans and specifications. A responsible and reasonable manufacturer would not have built the subject trailer without stanchions in the bolster dogs."
Alabama Trailer contends that it did not know how Alabama Power intended to use the trailer, and, consequently, could not have seen a danger so obvious as to require it to deviate from Alabama Power's specifications. Ms. Nickolson's expert testified that a reasonable contractor would not have followed the plans and specifications without informing Alabama Power of the significant defect that would be created by the absence of stanchions. This testimony is sufficient to create a genuine issue of material fact as to whether the plans and specifications Alabama Trailer relied upon were so obviously defective that a reasonable builder would be put on notice that the product would be dangerous and would likely cause injury. Viewing the evidence in a light most favorable to Ms. Nickolson, we conclude that the trial court erred in entering the summary judgment in favor of Alabama Trailer.
 B. Claims Against the Coemployees
Ms. Nickolson claims that the coemployees Harris, Howard, and Burnhart had a duty to provide Mr. Nickolson with a safe workplace and that they willfully breached that duty; that they willfully failed to control the conditions, methods, and manner in which his work was performed; that they willfully or intentionally removed, or failed to repair, a guard and/or safety device; and that they willfully caused or allowed the trailer to be improperly loaded. She contends that willful conduct on the part of the three coemployees proximately caused her husband's death.
Section 25-5-11(b), Ala. Code 1975, allows an employee or his estate to file an action against any person whose willful conduct causes personal injury to the employee. Section 25-5-11(c), Ala. Code 1975, defining "willful conduct," states in paragraph (1) that the term includes "[a] purpose or intent or design to injure another" and provides in that paragraph that "if a person, with knowledge of the danger or peril to another, consciously pursues a course of conduct with a design, intent, and purpose of inflicting injury, then he or she is guilty of `willful conduct.'"
 "Evidence showing only a knowledge or an appreciation of a risk of injury will not entitle a plaintiff to a jury determination of whether the co-employee acted with a purpose, intent, or design to injure another. A co-employee must either have actual knowledge that an injury will occur from his actions or have substantial certainty that injury will occur."
Bean v. Craig, 557 So.2d 1249, 1252 (Ala. 1990). (Citations omitted.)
Ms. Nickolson argues that the coemployee defendants' willful conduct is demonstrated by their "utter failure to supervise *Page 931 
Gene Nickolson and to provide him with a safe workplace." She concedes that these defendants' did not purposely set out, did not intend, and had no design, to injure or kill Mr. Nickolson; however, she argues that a reasonable person in these defendants' position would have known that injury or death was substantially certain to follow from their actions. She argues that they acted willfully by doing nothing to prevent the poles from rolling off the trailer; by not limiting the number of poles to be loaded on the trailer; by not putting stanchions into the bolster dogs; and by not instructing Mr. Nickolson never to climb on the trailer unless the poles were secured by straps.
Although the evidence may suggest that these defendants appreciated the risk that a pole would roll off the trailer and cause injury, the record does not support a finding that they had "actual knowledge" or knew to a "substantial certainty" that injury would occur. The defendant Harris did not work with Mr. Nickolson on the day of the accident and was not at the site at the time of the accident. The defendant Burnhart did not work with Mr. Nickolson on the day of the accident, but arrived at the site just as the accident was occurring. The defendant Howard worked with Nickolson on the day of the accident and had worked with him for eight or nine months before the accident. He testified that he did not expect the poles to roll off the trailer. Because Ms. Nickolson did not present substantial evidence indicating that the coemployee defendants acted willfully, the trial court properly entered the summary judgment in their favor.
 Conclusion
We affirm the judgment in favor of the coemployee defendants; we reverse the judgment in favor of Alabama Trailer; and we remand the case for further proceedings.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HOOPER, C.J., and MADDOX, HOUSTON, COOK, LYONS, BROWN, and JOHNSTONE, JJ., concur.
SEE, J., concurs in part and dissents in part.
[1] Alabama Power Company investigated the accident and completed a report regarding it. The report stated that the poles on the trailer had been originally 40'5" long and had weighed approximately 1,135 pounds each. The report states that the tops of the poles had been cut off and removed, so that some of the poles that fell from the trailer were 27'9" long and some of them were 31'2" long.
[2] "Bolster dogs" helped keep the poles on the trailer. Ms. Nickolson contends that if devices called "stanchions" had been inserted in the bolster dogs, they would have prevented poles that were stacked above the first tier from rolling off the trailer after the securing straps were removed.