12 So.3d 1173 (2008)
HOLIDAY ISLE, LLC
v.
Beth ADKINS et al.
1070202.
Supreme Court of Alabama.
May 23, 2008.
*1174 C. William Daniels, Jr., Keith S. Rivers, and Thomas M. Wood of Bowron, Latta & Wasden, P.C., Mobile, for appellant.
Winston R. Grow of Patridge, Smith, P.C., Mobile, for appellees.
LYONS, Justice.
Holiday Isle, LLC, a developer of condominiums, appeals from a preliminary injunction entered by the Mobile Circuit Court preventing Holiday Isle from negotiating irrevocable letters of credit issued on behalf of J & R Investments, LLC, and Beth Adkins. See Rule 4(a)(1), Ala. R.App. P. Because the trial court exceeded its discretion in entering the injunction, we reverse and remand with instructions to dissolve the injunction.

I. Facts and Procedural History

On March 4, 2005, J & R Investments, LLC, agreed to purchase unit 105 and on March 7, 2005, Beth Adkins, David Adkins, and Nancy Whitten agreed to purchase unit 104 in a condominium complex being developed by Holiday Isle. J & R Investments, on the one hand, and Beth Adkins, David Adkins, and Nancy Whitten, on the other (hereinafter J & R Investments and the individual purchasers are referred to collectively as "the purchasers"), then entered *1175 into preconstruction purchase and escrow agreements with Holiday Isle for the condominium units, which were to be completed within two years of April 1, 2005. The purchase agreements provided that the earnest-money deposit could be satisfied by letters of credit issued to Holiday Isle in lieu of cash. The purchasers selected this option; J & E Investments delivered a letter of credit to Holiday Isle, and Beth Adkins, David Adkins, and Nancy Whitten delivered a letter of credit to Holiday Isle. The purchase agreements provided that upon default by the purchasers, Holiday Isle and/or an escrow agent "shall draw on the existing Letter of Credit in whole and create with the proceeds thereof a cash Deposit to be placed with Escrow Agent, with said funds to be delivered to [Holiday Isle] as liquidated damages."
On March 28, 2007, the Town of Dauphin Island issued the certificate of occupancy for the condominiums. On April 2, 2007, the purchasers conducted a pre-closing inspection of their respective condominium units. Within the following week the purchasers informed Holiday Isle that they would not close on their condominium units because, they said, Holiday Isle had not completed the condominiums by April 1, 2007, as required by the purchase agreements. The purchasers also requested that their letters of credit be returned to them. In response, Holiday Isle contended that it had met its obligations under the purchase agreements, and it set the closing date for the purchasers' condominium units for April 30, 2007.
On April 27, 2007, Beth Adkins and J & R Investments requested that the Mobile Circuit Court issue a temporary restraining order ("TRO") preventing Holiday Isle from drawing on the letters of credit. Contemporaneously with the filing of the application for the TRO, Beth Adkins, David Adkins, Nancy Whitten, and J & R Investments also sought a judgment declaring their rights under the purchase agreements, rescission of the purchase agreements, and an injunction preventing Holiday Isle from drawing on the letters of credit. On June 8, 2007, Holiday Isle moved to compel arbitration and dismiss or stay the proceedings. After a hearing on the motion on June 27, 2007, the trial court ordered the case to arbitration on July 30, 2007.
On October 11, 2007, Holiday Isle objected to the request for a TRO and an injunction by Beth Adkins and J & R Investments. Holiday Isle argued that the trial court lacked jurisdiction to enter an injunction against it because, it said, the arbitrator now had jurisdiction over all the disputes in the case. In the alternative, Holiday Isle argued that the purchasers could not satisfy the requirements for obtaining a TRO or an injunction. The purchasers replied that the trial court retained jurisdiction to enter an injunction and that the requirements for obtaining injunctive relief had been satisfied.
On October 18, 2007, the trial court appointed an arbitrator to resolve all the disputes between the parties and issued a preliminary injunction to prevent Holiday Isle from negotiating the letters of credit. The trial court's order states that "[b]ecause the Letters of Credit are inextricably intertwined with the arbitration issues, the Court hereby ENJOINS the negotiation of the Letters of Credit by whoever is holding them, until this matter is resolved by the arbitrator." (Capitalization in original.) Holiday Isle appealed the trial court's entry of the preliminary injunction to this Court.

II. Standard of Review

We have often stated: "The decision to grant or to deny a preliminary injunction is within the trial court's sound discretion. *1176 In reviewing an order granting a preliminary injunction, the Court determines whether the trial court exceeded that discretion." SouthTrust Bank of Alabama, N.A. v. Webb-Stiles Co., 931 So.2d 706, 709 (Ala.2005).
A preliminary injunction should be issued only when the party seeking an injunction demonstrates:
"`(1) that without the injunction the [party] would suffer irreparable injury; (2) that the [party] has no adequate remedy at law; (3) that the [party] has at least a reasonable chance of success on the ultimate merits of his case; and (4) that the hardship imposed on the [party opposing the preliminary injunction] by the injunction would not unreasonably outweigh the benefit accruing to the [party seeking the injunction].'"
Ormco Corp. v. Johns, 869 So.2d 1109, 1113 (Ala.2003)(quoting Perley v. Tapscan, Inc., 646 So.2d 585, 587 (Ala.1994)).
To the extent that the trial court's issuance of a preliminary injunction is grounded only in questions of law based on undisputed facts, our longstanding rule that we review an injunction solely to determine whether the trial court exceeded its discretion should not apply. We find the rule applied by the United State Supreme Court in similar situations to be persuasive: "We review the District Court's legal rulings de novo and its ultimate decision to issue the preliminary injunction for abuse of discretion." Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418, 428, 126 S.Ct. 1211, 163 L.Ed.2d 1017 (2006); see also Justice Murdock's special writing while sitting as a judge on the Court of Civil Appeals in City of Dothan v. Eighty-Four West, Inc., 871 So.2d 54, 60 (Ala.Civ. App.2003) (Murdock, J., concurring specially on application for rehearing) (cited with approval in McGlathery v. Richardson, 944 So.2d 968, 970 (Ala.Civ.App. 2006)). To the extent they conflict with our holding today, previous expressions such as the one found in TFT, Inc. v. Warning Systems, Inc., 751 So.2d 1238, 1241-42 (Ala.1999) ("The applicable standard of review [of injunctive relief] depends on whether the trial court entered a preliminary injunction or a permanent injunction. A preliminary injunction is reviewed under an abuse-of-discretion standard, whereas a permanent injunction is reviewed de novo.") are hereby overruled.[1]

III. Analysis

A. Jurisdiction

We must first determine whether the trial court had jurisdiction to issue the preliminary injunction after it ordered the dispute to arbitration. Holiday Isle contends that the trial court retained only limited jurisdiction once it compelled arbitration because, it says, the arbitration clause, which is identical in all the purchase agreements, does not reserve to the trial court any jurisdiction for temporary or preliminary equitable relief. Holiday Isle relies on the decision of the United States Court of Appeals for the Eighth Circuit in Manion v. Nagin, 255 F.3d 535, 538-39 (8th Cir.2001), holding that "[i]n a case involving the Federal Arbitration Act (FAA), courts should not grant injunctive relief unless there is `qualifying contractual language' which permits it." Because, Holiday Isle asserts, the purchase agreements do not contain "qualifying contractual language" permitting the trial court to grant injunctive relief, the purchase agreements *1177 provide no grounds for the trial court to issue the preliminary injunction.
The purchasers respond by arguing that because, when the trial court entered the preliminary injunction, the case was not under the jurisdiction of any arbitration association and an arbitrator had not been selected, "[t]he trial court, in essence, was the only forum by which these matters could be resolved." Purchasers' brief at p. 23. The purchase agreements expressly provide that any arbitration proceedings shall not be conducted through the American Arbitration Association ("AAA"). However, the purchasers note that the purchase agreements also provide that disputes are to be submitted to arbitration under the Commercial Rules of the AAA or as the parties may later agree in writing. The purchasers further note that the Commercial Arbitration Rules of the AAA allow a party to seek interim measures from a judicial authority. Rule R-34(c) of the AAA's Commercial Rules provides: "A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate." Nothing before us indicates that the parties, by agreement entered into after the purchase agreements, displaced the choice of the AAA's Commercial Rules set forth in the purchase agreements.
The purchasers also note that in Drago v. Holiday Isle, L.L.C., 537 F.Supp.2d 1219 (S.D.Ala.2007), Holiday Isle also relied upon Nagin to argue that the federal district court lacked jurisdiction to issue an injunction because the case had been stayed pending arbitration. The court in Drago found that Nagin reflected a minority view and noted that the "majority of federal courts ... have concluded that in limited situations a binding arbitration clause does not bar a plaintiff from seeking emergency injunctive relief or other provisional remedies in court." 537 F.Supp.2d at 1221. The court in Drago specifically adopted the reasoning of the Fourth Circuit Court of Appeals in Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley, 756 F.2d 1048, 1052 (4th Cir.1985), as a basis for concluding that it may order equitable relief "where an arbitral award could not return the parties substantially to the status quo." 537 F.Supp.2d at 1222. Here, if the trial court's preliminary injunction was appropriately issued, it could be said that an arbitral award would not return the parties to the status quo where the proceeds of the letters of credit had previously been disbursed to the beneficiary.
We therefore apply the Commercial Rules of the AAA pursuant to the express terms of the purchase agreements and conclude that the trial court had jurisdiction to enter a preliminary injunction to order equitable relief to preserve the status quo. Whether the trial court erred in entering that injunction under the facts of this case is a separate issue.

B. Merits

A letter of credit exists independently of the underlying contract between a buyer and seller. See Benetton Servs. Corp. v. Benedot, Inc., 551 So.2d 295, 299 (Ala.1989); Southern Energy Homes, Inc. v. AmSouth Bank of Alabama, 709 So.2d 1180, 1185 (Ala.1998). "A letter of credit is a financing engagement by an issuing bank, made at the request of an applicant (or customer), to honor demands for payment by the beneficiary of the credit, provided the terms and conditions of the letter of credit are met." Southern Energy Homes, Inc., 709 So.2d at 1184 (citing § 7-5-103(1)(a), Ala.Code 1975 (definition for "letter of credit" now found at § 7-5-102(a)(10))). "The beneficiary of the standby credit reasonably expects to receive *1178 payment from the issuer promptly upon demand and before any litigation between the applicant and the beneficiary may occur." 709 So.2d at 1184 (citing John Dolan, The Law of Letter of Credit: Commercial and Standby Credits ¶¶ 3.06 & 3.07 (rev. ed.1996)). Thus, parties choose a letter of credit over other types of financing "so that they may have the benefit of prompt payment before any litigation occurs." 709 So.2d at 1185 (emphasis added).
Holiday Isle contends that the trial court erred in enjoining it from negotiating the letters of credit because, it says, Alabama law is well settled that the unique nature of letters of credit and their role in the financial community makes enjoining a letter of credit inappropriate. Holiday Isle asserts that this Court has reversed every injunction issued by a trial court preventing a beneficiary from drawing on a letter of credit. See SouthTrust Bank of Alabama, N.A., 931 So.2d at 709, Textron Fin. Corp. v. Hayes, 619 So.2d 1363 (Ala. 1993), Benetton Servs. Corp., 551 So.2d at 299. Holiday Isle also notes that in Southern Energy Homes, Inc., 709 So.2d at 1185-86, this Court held:
"We recognize that, as a general rule, letters of credit cannot exist without independence from the underlying transaction. [John Dolan, The Law of Letter of Credit: Commercial and Standby Credits] at ¶ 2.09[5] [(rev. ed.1996)]. Thus, when courts begin `delving into the underlying contract, they are impeding the swift completion of the credit transaction.' Id. `The certainty of payment is the most important aspect of a letter of credit transaction, and this certainly encourages hesitant parties to enter into transactions, by providing them with a secure source of credit.' Am-South v. Martin, 559 So.2d [1058] at 1062 [(Ala.1990)]."
In Southern Energy Homes, Inc., this Court went on to note that in a letter-of-credit transaction the parties "bargain for the advantages and disadvantages of the credit" and held that the trial court did not exceed its discretion by denying the applicant's motion for a preliminary injunction preventing the issuer from paying the letter of credit. 709 So.2d at 1187-88.
The purchasers argue that the fact that the present case deals with the purchase of condominium units, which is governed by the Alabama Uniform Condominium Act, § 35-8A-101 et seq., Ala.Code 1975 ("the AUCA"), distinguishes it from this Court's precedent holding that it is inappropriate to enjoin the negotiation of letters of credit. The purchasers note that the letters of credit satisfied the earnest-money deposit on the purchase of the condominium units and note that § 35-8A-410, Ala.Code 1975, titled "Escrow of deposits," provides that a deposit for the purchase of a condominium unit is held by an escrow agent until "(i) delivered to the declarant at closing; (ii) delivered to the declarant because of purchaser's default under a contract to purchase the unit; or (iii) refunded to the purchaser." The purchasers further contend that an escrow account established under the AUCA, and the rights created by it, differ from a letter-of-credit situation in which there is a simple contractual agreement that the letter of credit will be paid upon demand. The purchasers contend that under the AUCA the letter of credit is deposited into an escrow account that is similar to a trust fund and can be drawn up only if the developer of the condominium has shown that the buyer has defaulted. Thus, the purchasers assert that their letters of credit do not exist independently of the underlying transaction to purchase the condominiums and note that the Alabama Commentary to § 35-8A-410 states:

*1179 "The act provides that the account holder shall deliver these funds to the developer only at a sale closing or `because of the purchaser's default under a contract to purchase the unit.' Thus, the depository party has a duty of some care in being persuaded by a developer that the buyer has defaulted, at least where the buyer has notified the depository party of a conflicting position."
(Emphasis added.) The purchasers argue that allowing Holiday Isle to draw on the letters of credit when they contest their default would violate § 35-8A-410.
Holiday Isle responds by arguing that the purchasers' argument that their letters of credit are different from an escrow deposit under § 35-8A-410 because the underlying transaction involves the sale of condominium units is meritless and has no legal support. We agree. Section 35-8A-410 provides that "[a]ny deposit made in connection with the purchase of a [condominium] unit" shall be held in escrow "by a licensed title insurance company, an attorney, a licensed real estate broker, or an institution whose accounts are insured by a governmental agency or instrumentality until (i) delivered to the declarant at closing; (ii) delivered to the declarant because of the purchaser's default under a contract to purchase the unit; or (iii) refunded to the purchaser." Such language does not operate to preclude the parties from entering into an agreement in which, in lieu of an earnest-money deposit, a standby letter of credit is issued by a neutral bank and is payable to the beneficiary upon the purchaser's default.[2]
The well-reasoned jurisprudence of this Court condemning injunctions against drawing upon letters of credit is fundamental and applies to the purchasers' failure to close on the sale of the condominium units. If the proceeds of the letters of credit are disbursed and the purchasers' default cannot later be established, the purchasers' remedy is an action at law against the beneficiary of the letters of credit or perhaps against the depository party for want of due care in honoring the demand for payment as suggested by the Alabama Commentary to § 35-8A-410, an issue not before us.[3] Any other construction *1180 of the terms of the standby letters of credit would constitute judicial redrafting of the terms of the purchase agreements, which we decline to do.
We hold that the trial court's rationale that the negotiation of the letters of credit should be enjoined because "the Letters of Credit are inextricably intertwined with the arbitration issues" is contrary to the well-settled law that letters of credit exist independently from the underlying transaction. See Benetton Servs. Corp., 551 So.2d at 298-99, Southern Energy Homes, Inc., 709 So.2d at 1185-86. The purchasers bargained for the advantages and disadvantages of electing to use a letter of credit in lieu of cash to satisfy their earnest-money deposit on the purchase of the their condominium units, and the fact that the AUCA provides that a deposit for a condominium unit is kept until default occurs does not protect a purchaser from the universal rule that an injunction preventing a beneficiary from drawing on a letter of credit is inappropriate. "The certainty of payment is the most important aspect of a letter of credit transaction, and this certainty encourages hesitant parties to enter into transactions, by providing them with a secure source of credit." AmSouth Bank, N.A. v. Martin, 559 So.2d 1058, 1062 (Ala.1990). Accordingly, we hold that the trial court erred in granting the purchasers' motion for a preliminary injunction.[4]

IV. Conclusion

The order of the trial court entering the preliminary injunction is reversed, and the case is remanded with instructions to dissolve the preliminary injunction.
REVERSED AND REMANDED WITH INSTRUCTIONS.
SEE, WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
*1181 MURDOCK, J., concurs in the result.
COBB, C.J., dissents.
COBB, Chief Justice (dissenting).
I respectfully dissent. Although I agree with the majority that we should entertain reviewing a trial court's preliminary injunction under a de novo rather than excess-of-discretion standard, the circumstances in this case do not warrant such a change. Fundamental fairness is denied the parties in this case by not allowing them to brief and argue their respective positions with an understanding of the appropriate standard of appellate review.[5] The parties did not know that this Court would conclude that the facts presented here would be deemed undisputed and that the preliminary injunction would be subjected to a de novo review. Indeed, the parties are likely to be as surprised as I am that the majority, with little discussion and no fanfare, finds the facts to be undisputed. Logic dictates that if the facts were undisputed, Holiday Isle would have, instead of filing a motion to compel arbitration and dismiss or stay the proceedings, filed a motion for a summary judgment, which in the absence of a genuine issue of material fact, would have presented the query whether Holiday Isle was entitled to a judgment as a matter of law. The trial court would not have ordered this case to arbitration or enjoined the negotiation of the letters of credit had it not concluded that the facts are in dispute, particularly with respect to the underlying issue  whether the condominium units were completed within two years of April 1, 2005, in accordance with the terms of the purchase agreements.
The parties have not presented this Court with any definitive findings or conclusions about the record, and significant material differences exist about the facts to dissuade me from applying a de novo review to the preliminary injunction. On April 2, 2007, a date that was already beyond the two-year completion term, when the purchasers conducted the pre-closing inspection of their respective units, they were instructed upon their arrival to wear hard hats or they would not be allowed to enter the premises. Once inside the condominium complex, the purchasers were met with a reception area that was not glassed in, an elevator that did not appear in working condition, and an incomplete parking deck. When they reached their designated units, 104 and 105, the purchasers found laborers still performing work. Holiday Isle does not deny that the construction tasks noted by the purchasers were not finished or that as of April 2, 2007, no unit owner had been permitted to occupy the condominium or even allowed ingress or egress without an escort and a hard hat. Holiday Isle refused to return the letters of credit after the purchasers notified it that because the units had not been completed within two years of April 1, 2005, the purchase agreements were void. The purchasers demanded the return *1182 of their earnest-money deposit, i.e., their letters of credit. Holiday Isle refused to return the letters of credit and instead scheduled a closing date for April 30, 2007. Holiday Isle contends that the work remaining to be done on the units consisted only of "punch list items."
The purchasers performed another inspection of Holiday Isle on April 23, 2007. They found unit 105 in much the same condition as it had been on April 2, 2007. At this time, the inspection of unit 105 also revealed problems with paint and other defects. As for the condominium complex itself, the purchasers noted that the pool and parking garage were incomplete and that there were no permanent handrails on the stairs. The purchasers were asked to leave the premises before they could complete their inspection.
The facts concerning the ultimate holder of the letters of credit are also troubling. Section 4 of the purchase agreements provides that "Bay Title Insurance Company, Inc. shall be the Escrow Agent." On April 27, 2007, counsel for the purchasers wrote the escrow agent, Bay Title, informing it that the purchasers were contesting any finding that they had defaulted under the purchase agreements. Subsequently, the purchasers became aware that Bay Title had resigned as escrow agent, and the letters of credit were being held by Surety Land Title, Inc. On July 13, 2007, Surety Land Title delivered the letters of credit to Holiday Isle "since it did not have any written authority to hold the letters of credit nor any authority to draw on them." The purchasers dispute that the purchase agreements or letters of credit were modified in any way so as to authorize the appointment of a new escrow agent, including Surety Land Title. It is undisputed that Holiday Isle now possesses the letters of credit. In support of the motion for a preliminary injunction, the purchasers submitted evidence to the trial court supporting the reasons for their concern about the financial viability of Holiday Isle. The trial court was provided information about subcontractors' liens and other lawsuits and/or arbitration proceedings pending and/or threatened against Holiday Isle in connection with the condominium complex.
Although precedent establishes that a letter of credit generally exists independently of the underlying contract between a buyer and a seller, none of the cases the majority discusses involve a factual scenario, such as this one, that is governed by the Alabama Uniform Condominium Act, § 35-8A-101 et seq., Ala.Code 1975 ("the AUCA"). As the majority acknowledges, a deposit for the purchase of a condominium unit, whether cash or a letter of credit, is to be held by an escrow agent until closing, until the purchaser defaults, or until the deposit is refunded to the purchaser. The trial court entered the preliminary injunction in this case enjoining Holiday Isle from negotiating the letters of credit until after the factual disputes are resolved by the appointed arbitrator in arbitration requested by Holiday Isle and compelled by the trial court. I agree with the trial court that the letters of credit "are inextricably intertwined with the arbitration issues." By holding that the trial court erred in granting the purchasers' motion for a preliminary injunction, the majority has also effectively interfered with the arbitration of the ultimate issue. The letters of credit in this case were "in lieu" of the earnest-money deposit for the purchase of the condominium units under § 2(B) of the purchase agreements. According to § 35-8A-410, Ala.Code 1975, titled "Escrow of deposits," deposits in connection with the purchase of a condominium unit shall be held in escrow "by a licensed title insurance company, an attorney, a licensed real estate broker or an *1183 institution whose accounts are insured by a governmental agency or instrumentality until (i) delivered to the declarant at closing; (ii) delivered to the declarant because of the purchaser's default under a contract to purchase the unit; or (iii) refunded to the purchaser."
The escrow deposits mandated by § 35-8A-410 do not present an ordinary letter-of-credit situation. According to the Alabama Commentary to § 35-8A-410, the funds held in escrow are similar to a trust fund: "Equally important, the funds on deposit should be regarded in a manner somewhat similar to a trust fund, such that creditors of the developer, whether the construction lender, material suppliers or contractors, may not reach these funds to satisfy their claims against an insolvent developer." (Emphasis added.) If Holiday Isle is allowed, as the majority holds, to negotiate the letters of credit before arbitration is completed, the purpose of the Alabama Legislature in enacting § 35-8A-410 will be frustrated. The possibility exists that, before the parties can arbitrate their dispute, creditors of Holiday Isle may make a claim on the letters of credit as soon as they are converted to cash. As argued throughout the purchasers' brief, the injunction in this case provides a close analogy, both legally and equitably, to a constructive trust. The constructive-trust-fund nature of the letters of credit will be lost as soon as the preliminary injunction is dissolved.
In questionable violation of § 35-8A-410 of the AUCA, Holiday Isle is now acting as the escrow agent. This undisputed fact makes the need for a preliminary injunction, in order to avoid irreparable harm to the purchasers, of paramount importance. Under the express terms of the purchase agreements and § 35-8A-410, Holiday Isle is not an authorized escrow agent. An escrow agent is generally considered to be the agent of both parties to an escrow agreement. See Fisher v. Comer Plantation, Inc., 772 So.2d 455 (Ala.2000); Gurley v. Bank of Huntsville, 349 So.2d 43 (Ala.1977). With Holiday Isle in possession of the letters of credit instead of Bay Title, the "licensed title insurance company" agreed upon by the parties, the purchasers have lost the benefit of a neutral escrow agent, the entity charged with maintaining the escrow trust fund with due care. This scenario creates the need for the preliminary injunction prohibiting Holiday Isle from negotiating the letters of credit without a favorable ruling from the arbitrator.
Because Holiday Isle has appealed the order of the trial court issuing the preliminary injunction, as soon as the trial court dissolves the preliminary injunction on remand, Holiday Isle will presumably negotiate the letters of credit in its possession before arbitration is completed. If the arbitrator finds a genuine and material factual dispute over whether Holiday Isle completed the condominium units within the defined two-year period and then rules in favor of the purchasers, the dissolution of the preliminary injunction may have caused irreparable harm to the purchasers. The majority chooses not to address this potential outcome other than to propose "the purchasers' remedy is an action at law against the beneficiary of the letters of credit [Holiday Isle] or perhaps against the depository party for want of due care in honoring the demand for payment as suggested by the Alabama Commentary to § 35-8A-410." 12 So.3d at 1179. This conclusory statement by the majority does not address the legitimate concern of the purchasers that Holiday Isle may not be able to pay a future monetary judgment in their favor if Holiday Isle is allowed to negotiate the letters of credit before arbitration is completed. Nor does the majority address the quandary presented by the *1184 fact that Holiday Isle, rather than the agreed upon escrow agent, Bay Title, is in possession of the letters of credit.
Inadequacy of a remedy at law justifying an injunction may arise from the insolvency of the defendant. Martin v. First Federal Sav. & Loan Ass'n of Andalusia, 559 So.2d 1075 (Ala.1990) (preliminary injunction issued against a mortgage servicing company in financial difficulty that was continuing to collect mortgage payments after its servicing contract was terminated); Shelton v. Shelton, 238 Ala. 489, 192 So. 55 (1939). When a defendant, as here, is the holder of a property interest and its holding of that interest is disputed as unjust, unconscionable, or unlawful, a constructive trust can be imposed. See Ex parte Morton, 261 Ala. 581, 75 So.2d 500 (1954). However, in order to obtain a constructive trust, it is not essential to prove the inadequacy of a remedy at law. 261 Ala. at 592, 75 So.2d at 511. The issue whether a constructive trust results is one of fact. Pollution Control-Walther, Inc. v. Belzer, 406 So.2d 372 (Ala.1981). Constructive trusts can and have been imposed. See Holman v. Kruk, 485 So.2d 715 (Ala.1986) (constructive trust imposed upon minor's Social Security funds that sister had spent); Snellings v. Builders' Supply Co., 228 Ala. 47, 152 So. 459 (1934) (constructive trust imposed upon proceeds of mortgage created for benefit of plaintiffs).
The preliminary injunction issued by the trial court in the instant case is tantamount to a constructive trust over the letters of credit, especially in light of the fact that Holiday Isle, instead of a neutral escrow agent as required by § 35-8A-410, exercises control over the letters. A preliminary injunction has been found to be appropriate to preserve the status quo and to prevent dissipation of funds in a constructive trust when there are specific identifiable funds that the defendant has refused to turn over. See Georgia Banking Co. v. GMC Lending & Mortgage Servs. Corp., 923 So.2d 1224 (Fla.Dist.Ct. App.2006). The letters of credit at issue involve specific identifiable funds of the purchasers, akin to "trust funds," as explained by the Alabama Commentary to § 35-8A-410.
Under our precedent, a preliminary injunction may be issued when: (1) the requesting party would suffer irreparable harm without the injunction; (2) the requesting party has no adequate remedy at law; (3) the requesting party has at least a reasonable chance of success on the ultimate merits; and (4) the hardship imposed on the adverse party would not unreasonably outweigh the benefit accruing to the requesting party. SouthTrust Bank of Alabama, N.A. v. Webb-Stiles Co., 931 So.2d 706, 708 (Ala.2005) (quoting Ormco Corp. v. Johns, 869 So.2d 1109, 1113 (Ala. 2003), quoting in turn Perley v. Tapscan, Inc., 646 So.2d 585, 587 (Ala.1994)). In Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley, 756 F.2d 1048, 1052 (4th Cir.1985), the United States Court of Appeals for the Fourth Circuit held that equitable relief is appropriate when an arbitral award could not return the parties substantially to the status quo, particularly if the enjoined conduct would render the arbitration process a "hollow formality," i.e., "`the arbitral award when rendered could not return the parties substantially to the status quo ante.'" (Quoting Lever Bros. v. International Chem. Workers Union, Local 217, 554 F.2d 115, 123 (4th Cir.1976).) The majority of federal courts to rule on the question have concluded that in limited situations a binding arbitration agreement does not bar a plaintiff from seeking emergency injunctive relief or other provisional remedies. Performance Unlimited, Inc. v. Questar Publishers, Inc., 52 F.3d 1373 (6th Cir.1995). Clearly, in the instant case, the *1185 only way to preserve the status quo is to enjoin Holiday Isle from negotiating the letters of credit until after the arbitrator rules on the ultimate issue  whether either party violated the purchase agreements.
The majority's conclusion is in conflict with the purpose and intent of the AUCA. Because of the length of time needed to complete a new condominium complex, it is common practice for letters of credit rather than cash deposits to be used to secure preconstruction agreements. The majority's holding that such letters of credit are not directly tied to the underlying purchase agreements may thwart the use of such financing arrangements in the future. Thus, I disagree that this case warrants a change in the standard of review for a preliminary injunction. In determining if a trial court properly issued a preliminary injunction, the standard of review is whether the trial court exceeded its discretion in doing so. Baldwin County Elec. Membership Corp. v. Catrett, 942 So.2d 337, 344 (Ala.2006) ("`[I]f it cannot be shown that the trial court exceeded its discretion in either granting or refusing to grant a preliminary injunction, the court's "action will not be disturbed on appeal."'" (quoting Johnson v. Willis, 893 So.2d 1138, 1141 (Ala.2004), quoting in turn Teleprompter of Mobile, Inc. v. Bayou Cable TV, 428 So.2d 17, 19 (Ala.1983))). A trial court exceeds its discretion when it "exceed[s] the bounds of reason, all the circumstances before the lower court being considered." Valley Heating, Cooling, & Elec. Co. v. Alabama Gas Corp., 286 Ala. 79, 82, 237 So.2d 470, 472 (1970).
The record before this Court establishes that the purchasers have a reasonable chance of success on the ultimate merits and that Holiday Isle has not set forth evidence of any undue hardship it will endure by waiting for arbitration, a proceeding affirmatively sought by Holiday Isle, to be completed. In light of the material facts in dispute, which are inextricably intertwined with the letters of credit, combined with the possibility of irreparable harm to the purchasers if the status quo is not maintained, I cannot conclude that the trial court exceeded its discretion in issuing the preliminary injunction pending the outcome of arbitration. Accordingly, I dissent.
NOTES
[1] Chief Justice Cobb's challenge in her dissent to the fairness of the majority's sua sponte clarification of the standard of review proceeds on the false premise that adherence to the former standard would yield a different result.
[2] Chief Justice Cobb's dissenting opinion accepts the purchasers' contention that the letters of credit are tantamount to trust funds, relying on the Alabama Commentary to § 35-8A-410 dealing with protection of creditors of the developer such as "the construction lender, material suppliers or contractors." Of course, the purchasers are not within that category.
[3] The dissenting opinion recites factual disputes that are germane to the merits of the underlying controversy that gives rise to the request for injunctive relief. The relevance of these contested facts to a proceeding to enjoin the issuer from honoring a letter of credit is limited to the circumstances set forth in § 7-5-109, Ala.Code 1975, authorizing an injunction to prevent a material fraud by the beneficiary. This Court is committed to a narrow interpretation of the fraud exception to the general rule against the issuance of injunctions in letter-of-credit transactions. See Southern Energy Homes, Inc., 709 So.2d at 1186 ("The extensive use of the fraud exception may operate to transform the credit transaction into a surety contract."). The commentary to § 7-5-109 describes extreme fact patterns illustrative of when the fraud exception applies, such as "`[w]here the circumstances "plainly" show that the underlying contract forbids the beneficiary to call a letter of credit; where they show that the contract deprives the beneficiary of even a "colorable" right to do so; where the contract and circumstances reveal that the beneficiary's demand for payment has "absolutely no basis in fact"; where the beneficiary's conduct has "so vitiated the entire transaction that the legitimate purposes of the independence of the issuer's obligation would no longer be served."'" (quoting Ground Air Transfer v. Westates Airlines, 899 F.2d 1269, 1272-73 (1st Cir.1990) (citations omitted)). No allegation of fraud is presented here. Further, the trial court's sole justification for issuing the injunction was based on its conclusion that "the Letters of Credit are inextricably intertwined with the arbitration issues." Consequently, the mere presence of factual disputes as to the merits of the underlying controversy in this proceeding does not justify affirming the award of injunctive relief.
[4] The record contains a letter from counsel for Surety Land Title, Inc., which states that Surety had come into possession of the purchasers' letters of credit at some point after Bay Title Insurance Company, the escrow agent described in the purchase agreements, had resigned. No document from Bay Title corroborating Surety's assertion of Bay Title's resignation appears in the record. The dissenting opinion states: "With Holiday Isle in possession of the letters of credit instead of Bay Title, the `licensed title insurance company' agreed upon by the parties, the purchasers have lost the benefit of a neutral escrow agent, the entity charged with maintaining the escrow trust fund with due care. This scenario creates the need for the preliminary injunction prohibiting Holiday Isle from negotiating the letters of credit without a favorable ruling from the arbitrator." 12 So.3d at 1183. Even assuming Bay Title had in fact resigned as escrow agent, the controversy over the status of Bay Title or the authority of Surety as its successor is immaterial because the purchase agreements provide that the letters of credit were to be delivered to Holiday Isle and were merely "assignable" to the escrow agent. The purchase agreements state: "At Purchaser'[s] election, in lieu of cash for satisfaction of the Earnest Money Deposit, Purchaser, simultaneously with the execution of this Agreement, may deliver to Developer (as beneficiary), and assignable by Developer to Escrow Agent, a standby letter of credit ...." The terms of the letters of credit issued by the purchasers' respective banks authorized Holiday Isle to make demand for payment directly upon the banks. Holiday Isle now has possession of the letters of credit. The dissenting opinion assumes, without foundation in the purchase agreements, that Holiday Isle was required to use the services of an escrow agent and that otherwise the purchasers have no neutral party, when the banks that issued the letters of credit have such status.
[5] For example, principles of fundamental fairness and due process required this Court to limit the well-settled rule that this Court may affirm a summary judgment it determines is correct even when the trial court has based the summary judgment on an incorrect legal analysis to those situations in which both sides have received notice and an opportunity to address the bases of the summary judgment. See Liberty Nat'l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C., 881 So.2d 1013, 1020 (Ala.2003). In this case, the parties could not reasonably have anticipated that this Court would change the standard of review for a preliminary injunction; they have had no opportunity to frame their arguments in light of the new standard. Similarly, the change in the standard of review implemented by the Court in the majority opinion cannot be applied fairly to the parties in this case, even if the Court chooses to apply that change prospectively.