This is an appeal from a summary judgment in favor of AmSouth Bank, N.A., for $18,853.92, representing fees payable on a letter of credit.
The facts in this case are not disputed: In October 1984, the Alabama Department of Revenue issued a final assessment in the amount of $1,475,524.66, against I.N. Hickox, Unit Manager of the Citronelle Unit Operators Committee ("Citronelle Unit"), for oil and gas severance taxes. The Citronelle Unit appealed to the Circuit Court of Mobile County (Ala. Code 1975, §40-2-22), and posted a supersedeas bond issued by Fidelity and Deposit Company of Maryland ("Fidelity") in double the amount of the assessment. Fidelity required security for the issuance of the supersedeas bond. Accordingly, at the request of Citronelle Unit, AmSouth Bank, N.A. delivered an irrevocable letter of credit to Fidelity as security for issuing the supersedeas bond. AmSouth's fee was 1% of the face amount of the letter of credit, or $29,510.49 per year for the outstanding letter of credit. The terms of the letter of credit provided:
 "We hereby establish our Irrevocable Letter of Credit in your favor at the request of and for account of I.N. Hickox, Unit Manager, Citronelle Unit, Citronelle, Alabama up to the aggregate amount of * * TWO MILLION NINE HUNDRED FIFTY ONE THOUSAND FORTY NINE AND 32/100 DOLLARS * * * * ($2,951,049.32) available by your drafts drawn at sight on us and accompanied by the document specified below:
 " 'A statement signed by one of your officers to the effect that you have been called upon to make payment of loss, attorney's fees or other expenses by reason of executing the Supersedeas Appeal Bond, a copy of which is attached hereto as Exhibit "A", as surety on behalf of I.N. Hickox, Unit Manager, Citronelle Unit as Principal and in favor of the State of Alabama as Obligee in penalty of * * * TWO MILLION NINE HUNDRED FIFTY ONE THOUSAND FORTY NINE AND 32/100 DOLLARS * * * * ($2,951,049.32) and dated on or about the 23rd day of October, 1984 or that premium(s) thereon is unpaid and overdue. Exhibit "A" is for reference purposes only and is not a part of this Letter of Credit.'
 "This Letter of Credit shall be valid until October 23, 1985 and shall thereafter be automatically renewed for successive one-year periods upon the anniversary of its issue, unless at least thirty (30) days prior to any such anniversary date we notify you in writing to the Treasurer, Home Office of Fidelity and Deposit Company of Maryland, P.O. Box 1227, Baltimore, Maryland, 21203, that we elect not to so renew this Letter of Credit. Upon receipt by you of such notice *Page 1389 
you may draw hereunder by your drafts drawn at sight on us and accompanied by a statement signed by one of your officers to the effect that the aforesaid bond is in full force and effect on that date. "We hereby agree with you that all drafts drawn under and in compliance with the terms of this credit shall be duly honored upon presentation to the drawee."
The security agreement for the letter of credit between Citronelle Unit and AmSouth provides, in part, "The Applicant [Citronelle Unit] agrees to hold the Bank and its correspondents indemnified and harmless against any and all claims, loss, liability or damage, including reasonable counsel fees, howsoever arising from or in connection with the Credit. . . . The Applicant will pay the Bank, on demand, the Bank's commission and all charges and expenses paid or incurred by the Bank in connection with the Credit and interest where chargeable."
On February 3, 1986, the Circuit Court of Mobile County entered a judgment in favor of Citronelle Unit on the disputed severance tax assessment, holding that the State's assessment was in error. The circuit court order further provided that "the supersedeas bond posted by Plaintiff-Appellant [Citronelle Unit] is hereby released." On March 14, 1986, the State filed a notice of appeal to the Alabama Court of Civil Appeals, seeking reversal of the circuit court judgment in favor of Citronelle Unit.
While the case was on appeal, and before its resolution, counsel for Citronelle Unit informed AmSouth and Fidelity of the circuit court's order releasing the bond, and requested that AmSouth have the bond released by Fidelity and refund any prepaid bond premiums and letter of credit fees that accrued after February 3, 1986. Fidelity refused to release the bond or to return the letter of credit, stating that it was going to retain possession of the letter of credit until the case was appealed to the court of last resort.
AmSouth informed Citronelle Unit that it could not unilaterally cancel the irrevocable letter of credit, and that it remained at risk until the letter was returned by Fidelity, and that, because it was at risk, letter of credit fees were due and accruing.
The letter of credit incorporates the Uniform Customs andPractice for Documentary Credits (1983 Revision), International Chamber of Commerce Publication No. 400 (Uniform Customs), which provides, in article 10(d), that a letter of credit can not be cancelled or amended without the agreement of the issuing bank and the beneficiary (Fidelity). AmSouth, therefore, insisted that the fees be paid. Nevertheless, Citronelle Unit continued to refuse to pay letter of credit fees accruing after October 23, 1986.
The Alabama Court of Civil Appeals affirmed the circuit court's judgment in favor of Citronelle Unit, on December 3, 1986. The State filed a petition for writ of certiorari in this Court, which was overruled on May 22, 1987. Fidelity returned the letter of credit to AmSouth on June 11, 1987.
In the meantime, on May 9, 1987, Citronelle Unit filed this action for declaratory judgment against AmSouth and Fidelity, asking the court to find that Citronelle Unit owed no amounts for letter of credit charges and was due a rebate from AmSouth for any such charges accrued after February 3, 1986 (the date of the judgment of the Circuit Court of Mobile County resolving the disputed assessment in favor of Citronelle Unit); that the supersedeas bond issued by Fidelity was fully released by the court order of February 3, 1986; and, finally, that Fidelity be ordered to return the letter of credit to AmSouth effective February 3, 1986, and/or assume responsibility for any charges incurred as a result of its failure to do so.
AmSouth filed a counterclaim seeking a judgment for $18,853.92 in unpaid letter of credit fees. It also sought attorney fees and costs. The court entered summary judgment in favor of AmSouth and against Citronelle Unit, but retained jurisdiction to determine the amount of attorney fees. Citronelle Unit appealed. We affirm. *Page 1390 
The court held that AmSouth was entitled to fees on its letter of credit from October 23, 1986, to June 11, 1987, which Citronelle Unit had not paid. It also held that AmSouth was not required to refund fees paid for the period between February 3, 1986, and October 23, 1986, the dates for which Citronelle Unit had paid the fees. In this appeal, Citronelle Unit contests both holdings. If AmSouth was at risk on the irrevocable letter of credit between February 3, 1986, and June 11, 1987, the trial court was correct. If AmSouth was not at risk, Citronelle Unit's position is correct. We hold that AmSouth was at risk until the letter of credit was returned, and we affirm the judgment of the trial court.
Neither Fidelity nor AmSouth was a party to the severance tax case between Citronelle Unit and the State of Alabama. Fidelity has consistently contended that the judgment of February 3, 1986, did not terminate its risk under the supersedeas bond. Fidelity insists that it remained liable under its bond until the case was disposed of in the court of last resort. AmSouth, for its part, has consistently contended that it could not cancel the letter of credit without Fidelity's consent. Fidelity withheld that consent, and refused to return the letter of credit until the petition for writ of certiorari was denied by this Court. AmSouth argued below, and insists here, that, as long as its letter of credit remained outstanding, it was at risk and was thus entitled to its fee. We agree. It repeatedly advised Citronelle by letter:
 "The . . . letter of credit is subject to the Uniform Customs and Practice for Documentary Credits (1983 Revision) International Chamber of Commerce Publication No. 400. Article 10(d) of that publication (copy attached) clearly shows we do not have the ability to cancel the letter of credit in question without the consent of the Fidelity Deposit Company of Maryland. If they agree in writing to cancel the letter we will cancel it."
It is undisputed that Fidelity never consented to the cancellation of the letter, but insisted upon retaining the letter of credit until the appeal in the case was concluded.
AmSouth correctly took the position throughout the litigation between the State and Citronelle Unit that it could not become involved between Citronelle Unit and Fidelity over whether Fidelity had any continuing obligations under the supersedeas bond after the circuit court's order of February 3, 1986. It wrote Citronelle Unit's lawyer, by letter of March 20, 1987:
 "The February 3, 1986 court order appears to release the supersedeas bond. I fail to see why the bonding company refuses to cancel the bond or return our letter of credit. Whatever their reasons may be, however, I feel the Unit's problem is with the bonding company and not with AmSouth."
AmSouth's position is consistent with the law. Ala. Code 1975, § 7-5-103(1)(a), defines a letter of credit as:
 "an engagement by a bank . . . made at the request of a customer [Citronelle Unit] . . . that the issuer [AmSouth] will honor drafts or other demands for payment [by Fidelity] upon compliance with the conditions specified in the [letter of] credit."
It is a contract between the issuer and the beneficiary of the letter of credit. The obligation of the issuer is independent of the underlying contract between the customer and the beneficiary and runs directly to the beneficiary (Fidelity). See J. Dolan, The Law of Letters of Credit: Commercial andStandby Credits ¶ 2.02 at 2-3 (1984).
In Bank of the Southeast v. Jackson, 413 So.2d 1091, 1099
(Ala. 1982), this Court expressly recognized that the contract between the issuer and the beneficiary was independent, and not derivative of, the contract between the customer and the beneficiary. There, we said:
 "The letter is quite independent of the primary agreement between the party for whose account it is issued and the beneficiary, or any underlying transactions. Neither the issuing nor the confirming bank has any obligation, and is not permitted, to go behind the terms of the letter and the documents which are *Page 1391 
required to be presented, and to enter controversies between the beneficiary and the party for whose account the letter was opened concerning any other agreements or transactions. . . ."
Likewise, rulings of the Comptroller of the Currency provide:
 "(d) The bank's obligation to pay should arise only upon the presentation of a draft or other documents as specified in the letter of credit, and the bank must not be called upon to determine questions of fact or law between the account party [here Citronelle Unit] and the beneficiary [here Fidelity]."
12 C.F.R. § 7-7016 (1988). Accord, Ala. Code 1975, § 7-5-114.
Citronelle Unit argues that some courts recognize an exception to this rule when the issuer has knowledge that the documents offered to comply with the letter of credit are fraudulent. Our Code, likewise, provides for a narrow exception:
 "(2) Unless otherwise agreed when documents appear on their face to comply with the terms of a credit but a required document does not in fact conform to the warranties made on negotiation or transfer of a document of title . . . or is forged or fraudulent or there is fraud in the transaction:
 "(a) The issuer must honor the draft or demand for payment if honor is demanded by a negotiating bank or other holder of the draft or demand which has taken the draft or demand under the credit and under circumstances which would make it a holder in due course (section 7-3-302) and in an appropriate case would make it a person to whom a document of title has been duly negotiated (section 7-7-502) or a bona fide purchaser of a security (section 7-8-302); and
 "(b) In all other cases as against its customer, an issuer acting in good faith may honor the draft or demand for payment despite notification from the customer of fraud, forgery or other defect not apparent on the face of the documents but a court of appropriate jurisdiction may enjoin such honor."
§ 7-5-114(2), Code 1975.
However, under the undisputed facts in this case, the fraud exception is inapplicable. There is no evidence of any threat by Fidelity to draw fraudulently upon the supersedeas bond or the letter of credit. To the contrary, there was a genuine dispute between Citronelle Unit and Fidelity over the latter's continuing obligation on the supersedeas bond after the circuit court's order of February 3, 1986, pending the appeal thereof.
Citronelle Unit next contends that AmSouth had a good faith duty to cancel the letter of credit and then to refuse payment on the automatic draw-down, on the basis that the bond was not in full force and effect. Again, this would put the bank in the position of determining issues that it has no duty to consider.
Letters of credit must remain independent of the underlying contract in order to allow their continued unhindered use as a means of payment and guaranteeing payment in the business world. Absent a clear showing of a present or past fraud, the fraud exception to the independence principle will not apply.
The uncontroverted facts offered below in support of and in opposition to the motion for summary judgment present a question of law appropriate for resolution by summary judgment. We affirm the trial court's summary judgment in favor of AmSouth for $18,853.92 for unpaid fees accruing between October 23, 1986, and June 11, 1987.
We do not address Citronelle Unit's argument regarding attorney fees, because the trial court retained jurisdiction of that issue.
AFFIRMED.
TORBERT, C.J., and JONES, ADAMS, HOUSTON (sitting as duty judge) and STEAGALL, JJ., concur.
 *Page 74