Benetton Services Corporation ("Benetton"), an Italian clothing manufacturer and distributor, appeals from an order enjoining it from drawing on an irrevocable letter *Page 297 
of credit issued by Southland Bank of Dothan ("Southland") on behalf of Benedot, Inc. ("Benedot").
Benedot was formed for the purpose of selling Benetton clothing at retail. The agreement between Benedot and Benetton provided that Benedot would sell only Benetton clothing. Benedot opened a retail outlet in Dothan and one in Auburn.
Benedot placed several orders with Benetton over a period of approximately 36 months. All of the orders were delivered late, and all contained some non-conforming merchandise. Benedot's account with Benetton became past due in the amount of approximately $140,000, although the exact past due amount was disputed by Benedot.
Benedot was told by Benetton that Benetton had made changes in personnel, and that future orders would be conforming and would be delivered on time. Benedot placed a "spring/summer 1988" order with Benetton.
As a condition to shipping Benedot's order, Benetton required Benedot to pay $20,000, and to have issued to Benetton an irrevocable letter of credit in the amount of $61,000. Pursuant to Benedot's request, Southland issued an irrevocable letter of credit to Benetton. The letter of credit provided:
 "Southland Bank of Dothan opens its Irrevocable Standby Letter of Credit in favor of Benetton Services Corp. for the account of Benedot, Inc. in the following manner and on the following terms:
 "1. Purpose. This credit is available and drafts must be drawn hereunder for the account of Benedot, Inc., Dothan, Alabama 36303.
 "2. Drafts. Benetton Services Corp. drawn on Southland Bank of Dothan at sight which must be negotiated on or before February 28, 1989 but not prior to December 30, 1988 and each of which must state upon its face 'Drawn under Standby Letter of Credit # 8 dated July 26, 1988 of the Southland Bank of Dothan' [sic].
 "3. Documentation. Drafts, when presented for negotiation, must be accompanied by the following instruments:
 "a) Official invoice statement from Bennetton, S.P.A. and/or Bennetton Manufacturing Corporation for the account of Benedot, Inc. showing unpaid balance sixty (60) or more days past due, indicating unpaid amounts, plus freight and duty (if due), plus reasonable attorney's fees and collection expenses (if applicable), for merchandise shipped and received after the date of this Letter of Credit.
 "(b) Statement signed by an official of Benetton Services Corp. certifying that the account of Benedot, Inc. is sixty (60) or more days past due and remains unpaid as of the date of the draft.
 "4. Notation. This is a notation of credit. Each draft hereunder must be endorsed herein, each draft or an attached writing must indicate that such notation has been made, and this Letter of Credit must be attached to the last draft when the credit is exhausted.
 "5. Total. The sum or sums of all drafts drawn under this Letter of Credit must not exceed $61,000.00.
 "6. Expiration. This Letter of Credit expires at our counters in Dothan, Alabama on February 28, 1989.
 "7. Obligation of Issuer. Southland Bank of Dothan agrees with the drawers, endorsers, and bona fide holders of drafts drawn and negotiated in compliance with the terms of this Letter of Credit that such drafts will be duly honored upon due presentation to this bank.
 "8. Other Provisions. Partial drawings are permitted. All charges in connection with this Letter of Credit are for the account of Benedot, Inc.
 "This credit is subject to the Uniform Customs and Practice of Documentary Credits 1983 Revision, International Chamber of Commerce, Paris, France, Publication # 400 and engages us in accordance with the terms thereof."
The spring/summer 1988 order was delivered late and it contained nonconforming goods. Benedot accepted the shipment, as it had accepted the earlier orders, notwithstanding its nonconformity. At the hearing on the injunction request, Benedot explained *Page 298 
that it had accepted the merchandise because it was very difficult and expensive to return the goods to Italy and that Benetton had requested that Benedot sell the goods.
When Benedot's account regarding the spring/summer 1988 order became 60 days past due, Benetton drew a draft against the letter of credit. On February 28, 1989, Benetton presented the draft and the required documentation to Southland in compliance with the terms of the letter of credit. Southland refused to pay Benetton under the terms of the letter of credit and advised it that a temporary restraining order had been issued pursuant to Rule 65(b), A.R.Civ.P., enjoining Southland from making payment thereunder.
A hearing was held, and the trial court granted a preliminary injunction enjoining Benetton from drawing upon, and Southland from honoring, the letter of credit. The trial court further ordered Southland to pay the amount of the drafts into court within seven days of the order granting the injunction. Benetton appeals.
Benedot filed a motion to dismiss the appeal, contending that this Court lacks jurisdiction over the case because the order appealed from is an interlocutory order.
An appeal to this Court, as a general rule, will not lie from an order or judgment that is not final and conclusive. Ala. Code 1975, § 12-22-2. However, this Court does have jurisdiction over an appeal "from any interlocutory order granting, continuing, modifying, refusing, or dissolving an injunction." See Rule 4(a)(1)(A), A.R.App.P. Therefore, this case is properly before this Court.
Payment under an irrevocable letter of credit, upon compliance with its terms, is independent of the underlying contract. Bank of the Southeast v. Jackson, 413 So.2d 1091
(Ala. 1982). The issuer of a letter of credit must honor a draft drawn thereunder that complies with the terms of the letter of credit, regardless of whether the goods or documents conform to the underlying contract. Code 1975, § 7-5-114.
Because the letter of credit represents an independent obligation of the issuer to the beneficiary, payment under an irrevocable letter of credit may not be enjoined absent evidence of forgery or fraud in the issuance of the letter or fraud in the underlying transaction for which the letter of credit was issued. See, Citronelle Unit Operators Committee v.AmSouth Bank, N.A., 536 So.2d 1387 (Ala. 1988); Code 1975, §7-5-114(2)(b).
In order for one to succeed on a fraud claim, he must establish that a false representation of a material existing fact was made, that he detrimentally relied upon it, and that he was damaged as a proximate result. Earnest v.Pritchett-Moore, Inc., 401 So.2d 752 (Ala. 1981). If the fraud claim is based upon a promise to perform a future act, the party must also prove that the promisor, at the time of the alleged misrepresentation, did not intend to do the act promised and had an intent to deceive. Clanton v. Bains OilCo., 417 So.2d 149 (Ala. 1982).
Benedot has failed to prove fraud. Benetton promised that, upon receipt of the $20,000 and a letter of credit, it would ship conforming goods and that delivery would be timely. This is clearly a promise to do an act in the future; to base a fraud claim on that promise, Benedot had to prove that Benetton, when it made the agreement, did not intend to comply with its terms. Also, Benedot had to prove that, at the time that promise was made, Benetton had an intent to deceive. The record is devoid of any such evidence. The evidence would support, at most, a finding that the promise was recklessly made, and, as we held in Kennedy Electric Co. v. Moore-Handley,Inc., 437 So.2d 76 (Ala. 1983), a reckless misrepresentation cannot support a fraud action where that misrepresentation relates to a future act. Furthermore, the failure to perform a promised act is not in itself evidence that the defendant, at the time the promise was made, intended to deceive.Russellville Production Credit Ass'n v. Frost, 484 So.2d 1084
(Ala. 1986). *Page 299 
In Citronelle Unit Operators Committee, supra, this Court stated:
 "Ala. Code 1975, § 7-5-103(1)(a), defines a letter of credit as:
 " 'an engagement by a bank . . . made at the request of a customer . . . that the issuer . . . will honor drafts or other demands for payment . . . upon compliance with the conditions specified in the [letter of] credit.'
 "It is a contract between the issuer and the beneficiary of the letter of credit. The obligation of the issuer is independent of the underlying contract between the customer and the beneficiary and runs directly to the beneficiary. . . . See J. Dolan, The Law of Letters of Credit: Commercial and Standby Credits ¶ 2.02 at 2-3 (1984).
 "In Bank of the Southeast v. Jackson, 413 So.2d 1091, 1099 (Ala. 1982), this Court expressly recognized that the contract between the issuer and the beneficiary was independent, and not derivative of, the contract between the customer and the beneficiary. There, we said:
 " 'The letter is quite independent of the primary agreement between the party for whose account it is issued and the beneficiary, or any underlying transactions. Neither the issuing nor the confirming bank has any obligation, and is not permitted, to go behind the terms of the letter and the documents which are required to be presented, and to enter controversies between the beneficiary and the party for whose account the letter was opened concerning any other agreements or transactions. . . .'
 "Likewise, rulings of the Comptroller of the Currency provide:
 " '(d) The bank's obligation to pay should arise only upon the presentation of a draft or other documents as specified in the letter of credit, and the bank must not be called upon to determine questions of fact or law between the account party . . . and the beneficiary. . . .'
 "12 C.F.R. § 7-7016 (1988). Accord, Ala. Code 1975, § 7-5-114."
Citronelle Unit Operators Committee, 536 So.2d at 1390-91.
A preliminary injunction can be issued only upon a showing of a threat of imminent irreparable injury. Irreparable injury is injury that can not be adequately compensated for by damages at law. Teleprompter of Mobile, Inc. v. Bayou Cable TV,428 So.2d 17 (Ala. 1983). In this case, Benedot has an adequate remedy at law, i.e., it can sue Benetton for breach of contract. Therefore, Benedot has failed to prove that it would suffer irreparable injury absent the granting of the injunction.
Our holding that Benedot failed to prove fraud and irreparable injury makes it unnecessary for us to address Benetton's contention that the trial court's order violates the requirements of Rule 65(d), A.R.Civ.P.
The trial court's order granting the preliminary injunction is, therefore, due to be reversed, and the case is remanded with instructions to release the funds due and owing to Benetton pursuant to the letter of credit issued by Southland.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, JONES and KENNEDY, JJ., concur.