PARKER, Justice.
 

 Richard A. Diamond appeals and Bank of Alabama (“BOA”) cross-appeals, both seeking relief from a judgment of the Jefferson Circuit Court awarding BOA $200,000 on a promissory note and awarding BOA $132,601.67 in attorney fees in an action brought by BOA against Diamond and others. Diamond disputes the trial court’s holding that Diamond must reimburse BOA for payments BOA made pursuant to a letter of credit. BOA challenges the trial court’s failure to award BOA interest as part of its judgment
 
 *554
 
 against Diamond, Premier Business Centers, Inc. (“PBC”), and O. William Evans.
 
 [1]
 
 Because BOA was entitled to the reimbursement of payments it made pursuant to the letter of credit, we affirm the judgment of the trial court in Diamond’s appeal (case no. 1051033). Because in BOA’s cross-appeal (case no. 1051034) we hold that BOA was entitled to interest on the moneys advanced pursuant to the letter of credit, we remand the case for the trial court to determine the appropriate amount of interest due BOA.
 

 Background and Procedural Posture
 

 Diamond was a director of HQ Birmingham, Inc., the name by which PBC was formerly known, and Evans was its president. When the name was changed to PBC,
 
 [2]
 
 Diamond became the president and 50% owner of PBC, Evans owned 45% of the stock of PBC, and Evans’s wife, Denise, owned 5%.
 

 Effective April 7, 2003, HQ Birmingham, Inc., entered into a lease agreement with Gateway Alabama Properties, Inc., pursuant to which HQ Birmingham acquired 19,984 square feet of rentable space in suite no. 400, One Chase Corporate Center, in Birmingham. HQ Birmingham divided and sublet the office space to small businesses and provided other services to the sublessees. The lease with Gateway was executed by Evans as then president of HQ Birmingham. It required no rental payments for the first nine months, and HQ Birmingham was to provide a standby letter of credit for Gateway’s benefit to secure HQ Birmingham’s obligations and the rental payments when due.
 

 On December 1, 2003, BOA, on application by “Premier Business Centers, Inc. f/k/a HQ Birmingham, Inc.,” issued a $200,000 standby letter of credit for the benefit of Gateway Alabama Properties, Inc. In its commitment letter, BOA advised Diamond, who was negotiating the terms of the letter of credit on behalf of PBC, that BOA required collateral in the form of a blanket lien on furniture, fixtures, and equipment and joint and personal guaranties by Diamond and Evans. The commitment letter also provided that the letter of credit was to be in the amount of $200,000 until August 1, 2004, and in the amount of $120,000 from August 1, 2004, through August 1, 2005. The irrevocable letter of credit actually issued by BOA, however, was in the amount only of $200,000. It reads, in pertinent part, as follows:
 

 “We [BOA] hereby establish our Clean Unconditional Irrevocable Transferable Letter of Credit No._(the ‘Letter of Credit’) in favor of Gateway Alabama Properties, Inc., a California corporation, and its successors and permitted assigns (collectively, the ‘Beneficiary’) for an aggregate amount not to exceed the amount indicated above [$200,000], expiring at office located at 2340 Woodcrest Place, Suite 200, Birmingham, AL 35209 ATTN: Lester O. Hamiter with our close of business on August 1, 2004 (the ‘Expiry Date’).
 

 “Funds under this Letter of Credit are payable in immediately available funds of [BOA] (‘Issuer’) to Beneficiary upon presentation to [BOA] of Beneficiary’s original of the Letter of Credit and a sight draft drawn on [BOA], in the form attached as Exhibit ‘A’ hereto, or upon presentation to Issuer of Beneficiary’s original of the Letter of Credit and
 
 *555
 
 a demand for payment, not to exceed $200,00.00, stating that: ‘Beneficiary hereby demands payment of $_ [a sum not to exceed $200,000.00] under this Letter of Credit.’
 

 “[BOA] shall honor the Letter of Credit against conforming documents without inquiry as to the incumbency or authority of the party executing the sight draft on behalf of Beneficiary, whether or not Applicant disputes the incumbency or authority of the party executing the sight draft on behalf of Beneficiary.
 

 “Multiple demands for payment may be made hereunder.
 

 “It is a condition of this Letter of Credit that it shall be automatically extended without amendment for an additional period of one (1) year from the present or each future Expiry Date, unless, at least ninety (90) days prior to such Expiry Date, we send you a notice in writing by certified mail, overnight courier or hand delivery at the above address, that we elect not to renew this Letter of Credit for such additional period.”
 

 In association with the letter of credit, PBC executed a promissory note to BOA agreeing to pay up to $200,000 conditioned on future advances “upon presentment of irrevocable commercial letter of credit issued to Gateway Alabama Properties, Inc.” Other provisions of the note require the payment of “interest on the outstanding principal balance,” the payment of monthly accrued-interest payments “beginning 01/01/2004,” and the payment of principal “at maturity on 08/01/2004 if called upon.” The note contains the following “ADDITIONAL TERMS”:
 

 “THIS NOTE IS SECURED BY BLANKET LIEN ON FURNITURE, FIXTURES AND EQUIPMENT.
 

 “THIS NOTE IS SUPPORTED BY IRREVOCABLE LETTER OF CREDIT DATED 12/01/2003 TO GATEWAY ALABAMA PROPERTIES, INC.
 

 “THIS NOTE IS FURTHER SUPPORTED BY UNLIMITED PERSONAL GUARANTY AGREEMENTS BY RICHARD A. DIAMOND AND O. WILLIAM EVANS.”
 

 (Capitalization in original.)
 

 Page 2 of the note contains additional conditions that are incorporated by virtue of the following statement in bold print located on page 1 immediately above the signature block: “SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2).” (Capitalization in original.) Among the terms on page 2 is one that states that “interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance.” Another relevant provision is titled “OBLIGATIONS INDEPENDENT” and states, in part:
 

 “Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note.”
 

 The note was signed by “Premier Business Centers, Inc., Richard A. Diamond, President.”
 

 Diamond, as then president of PBC, also executed a line-of-credit agreement on behalf of PBC. That agreement identifies only PBC as the borrower, stating that
 

 
 *556
 
 “ T includes each borrower above, jointly and severally.” The lender is identified as BOA, stating that “ You’ means lender, its successors and assigns.” The agreement provides:
 

 “You [BOA] have extended to me [PBC] a line of credit in the AMOUNT of TWO HUNDRED THOUSAND AND 00/100’S $200,00.00.
 
 You will make loans to me from time to time until
 
 ...
 
 08/01/200⅛.
 
 Although the line of credit expires on that date,
 
 I will remain obligated to 'perform my duties under this agreement so long as I owe money advanced according to the terms of this agreement,
 
 as evidenced by any note or notes I have signed promising to repay these amounts.
 

 [[Image here]]
 

 “AMOUNT: This line of credit is OBLIGATORY: You may not refuse to make a loan to me under this line of credit unless one of the following occurs: ... e. UPON PRESENTMENT OF IRREVOCABLE COMMERCIAL LETTER OF CREDIT ISSUED TO GATEWAY ALABAMA PROPERTIES, INC.
 

 “PROMISSORY NOTE: I will repay any advances made according to this line of credit agreement as set out in the promissory note, I signed on 12/01/2003.... The note sets out the terms relating to maturity, interest rate, repayment and advances. If indicated in the promissory note, the advances will be made as follows: UPON PRESENTMENT OF IRREVOCABLE COMMERCIAL LETTER OF CREDIT ISSUED TO GATEWAY ALABAMA PROPERTIES, INC.
 

 “RELATED DOCUMENTS: I have signed the following documents in connection with this line of credit and note(s) entered into in accordance with this line of credit: security agreement dated 12/01/2003; guaranty dated 12/01/2003.
 

 “MISCELLANEOUS:
 
 This line of credit may not be changed except by a written agreement signed by you and me.
 
 The law of the state in which you [BOA] are located will govern this agreement. Any term ... contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation.”
 

 (Capitalization in original; emphasis added.)
 

 In addition to the note and the line-of-credit agreement, Diamond and Evans each provided a “guaranty” document personally guaranteeing the full and prompt payment when due of debts and obligations described in the identical guaranty documents executed by Diamond and Evans on December 1, 2003. The guaranty documents identify PBC as the borrower and BOA as the lender. They state that “the Undersigned guarantees to Lender the payment and performance of the debt, liability or obligation of Borrower to Lender evidenced or arising out of the following: $200,000 promissory note securing letter of credit, of even date.”
 

 Effective December 31, 2003, Denise Evans purchased Diamond’s share of PBC by formal agreement. Diamond then resigned as president and as a member of the board of directors of PBC. Diamond’s wife, Shelley, who was also a member of the board of directors, resigned her position as part of the same agreement. Diamond’s guaranty to BOA, by its terms, was revocable by the guarantor, provided that there was no “indebtedness existing or committed for at the time of the actual receipt of such notice [of revocation] by the Lender.” Diamond, however, has presented no evidence indicating that he had revoked his guaranty.
 

 
 *557
 
 On August 10, 2004, BOA issued a check for $54,942.88 to Gateway against a sight draft presented in accordance with the presentation terms of the letter of credit. BOA then paid Gateway on a sight draft in the amount of $145,057.12 on August 24, 2004. On August 16, 2004, when they did not promptly reimburse BOA for the first payment, BOA sued PBC, alleging in count 1 breach of the promissory note, and Diamond and Evans, alleging in count 2 breach of their guaranties. BOA later amended its complaint to add counts 3 and 4, claiming that Diamond had intentionally misrepresented his intentions to repay the moneys advanced and that BOA had relied on his representations to its detriment (count 3) and that Diamond had negligently failed to read the guaranty document and understand his obligations under it (count 4). BOA sought actual damages of $200,000 and punitive damages of $800,000 on count 3, and a judgment for actual damages of $200,000 plus interest and costs and $500,000 in punitive damages on count 4.
 

 PBC, Diamond, and Evans argued that because the line-of-credit agreement and the guaranties had expired on August 1, 2004, BOA was not entitled to reimbursement for the payments it had made to Gateway under the letter of credit. The parties moved for a summary judgment, and on December 27, 2005, the trial court granted, in part, BOA’s summary-judgment motion and awarded BOA, from PBC under its promissory note and from Diamond and Evans on their guaranties, $200,000. The trial court also found that BOA had not supported its intentional-misrepresentation claim against Diamond in count 3 and that Alabama law did not support the “negligent failure to read and understand” claim BOA asserted as count 4 of the amended complaint. The trial court then dismissed those claims with prejudice.
 

 After hearing arguments regarding BOA’s application for over $200,000 in attorney fees, the trial court issued an order on March 24, 2005, awarding BOA $132,601.67 in attorney fees. It added that amount to the $200,000 of principal indebtedness and entered judgment in favor of BOA for $332,601.67 against PBC, Diamond, and Evans, “which defendants shall be jointly and severally obligated for this judgment.” Because cross-claims asserted by Diamond against Evans and PBC and by Evans and PBC against Diamond remained pending,
 
 [3]
 
 the trial court certified the judgment as final pursuant to Rule 54(b), Ala. R. Civ. P., and BOA, Diamond, and Evans and PBC appealed separately from the judgment. The appeal of Evans and PBC has been dismissed, see
 
 supra,
 
 note 1, leaving Diamond’s appeal (case no. 1051033) and BOA’s cross-appeal (case no. 1051034).
 

 Analysis
 

 “In reviewing a summary judgment, an appellate court looks at the same factors that the trial court considered in ruling on the motion .... [0]n appeal a summary judgment carries no presumption of correctness.”
 
 Hornsby v. Sessions,
 
 703 So.2d 932, 938 (Ala.1997).
 

 “Tn reviewing the disposition of a motion for summary judgment, we utilize the same standard as that of the trial court in determining whether the evidence before the court made out a genuine issue of material fact’ and whether the movant was entitled to a judgment as a matter of law. When the movant makes a prima facie showing that there is no genuine issue of materi
 
 *558
 
 al fact, the burden then shifts to the nonmovant to present substantial evidence creating such an issue. Evidence is ‘substantial’ if it is of ‘such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ”
 

 Ex parte General Motors Corp.,
 
 769 So.2d 903, 906 (Ala.1999) (citations omitted). “Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant.”
 
 Hobson v. American Cast Iron Pipe Co.,
 
 690 So.2d 341, 344 (Ala.1997).
 

 Case No. 1051033
 

 Diamond argues that because the loan documents executed in support of the letter of credit had expired before BOA made the payments to Gateway under the letter of credit, the trial court erred when it enforced the documents against him. He next argues that the trial court erred when it disallowed parol evidence regarding negotiations that occurred after the execution of the loan documents and not prior to, or contemporaneously with, the signing of the loan documents.
 

 There are four loan documents: the line-of-credit agreement, the promissory note, the personal guaranties, and a security agreement.
 
 [4]
 
 The line-of-credit agreement provides for the creation of a debt, the promissory note evidences PBC’s obligation to repay payments made under the letter of credit, and the guaranties guarantee the payment of the debt evidenced by the promissory note.
 

 The line-of-credit agreement obligated BOA to loan money to PBC by honoring its irrevocable letter of credit to Gateway.
 
 [5]
 
 Payment of up to $200,000 was to be made upon presentation “from time to time until ... 08/01/2004.” Diamond argues:
 

 “One event that terminated the right to make a loan is the expiration of the line itself. The parties agreed to create the line of credit on December 1, 2003 and to close it on August 1, 2004. [PBC] was obligated to pay only monies ‘advanced according to the terms of this agreement....’ Importantly, none of the terms of the agreement could be changed except by written agreement, signed by BOA and [PBC]. BOA does not have any signed document that renews the line of credit agreement.... BOA is not aware of any provision in the line of credit agreement that causes the ... agreement to renew automatically.... BOA confirmed in testimony that the ... agreement was ‘designed’ to expire on August 1, 2004 because BOA may have been required to reduce the [letter of credit] from $200,000 to $120,000....
 

 “The Promissory Note
 

 “The promissory note evidenced the debt created by the line of credit agreement. It matured on August 1, 2004. As of the maturity date, BOA had not advanced any money under the line of credit agreement. The note provided that it, and any agreement securing the note, could not be modified unless the modification was in writing and signed by [PBC] and BOA. The promissory note had a maturity date of August 1,
 
 *559
 
 2004, which corresponded exactly with the expiration date of the [letter of credit]. As of August 1, 2004, BOA had not advanced any funds on the loan on behalf of [PBC].
 

 “The Limited Guaranty
 

 “Mr. Evans and Diamond each signed identical limited guaranties.... Both ... checked the box ... that called for a
 
 limited
 
 form of guaranty, as opposed to an
 
 unlimited
 
 guaranty.... By checking the limited guaranty box ..., Diamond agreed to pay only those debts created by the terms of the Loan Documents. Diamond crossed out paragraph ‘B,’ which would have obligated him to pay all indebtedness of [PBC], from any source. In other words, when the loan documents expired, the limited guaranties, which secured the Loan Documents, also expired.
 

 “In Alabama, a letter of credit transaction involves three
 
 separate
 
 and
 
 distinct
 
 commitments: (1) the applicant’s agreement with the bank, which, obligates the bank to issue the letter and obligates the applicant to reimburse the bank (in this case, the [letter of credit] and promissory note between BOA and [PBC]); (2) the bank-beneficiary relationship, i.e., the letter of credit itself (in this case the [letter of credit] made by BOA in favor of [Gateway]); and (3) the applicant-beneficiary relationship, i.e., the underlying contract (in this case, the lease agreement between [Gateway] and [PBC]).
 
 Nobel Ins. Co. v. First Nat. Bank of Brundidge,
 
 821 So.2d 210, 216-17 (Ala.2001). Thus, the law treats BOA’s commitment under the [letter of credit] to [Gateway] as a separate and distinct commitment from the underlying transaction between BOA and [PBC]. Unless a bank documents both commitments in
 
 one
 
 debt instrument, a court should analyze the contours of each document separately. Stated differently, the vitality of each separate commitment rises or falls on its own merits.”
 
 [6]
 

 Diamond’s brief, at 25-28 (emphasis in original).
 

 BOA argues that the loan was not made after the loan documents expired on August 1, 2004, but was actually made on December 1, 2003, when the promissory note was signed and the letter of credit issued. “The loan was made and the debt owed by [PBC] before August 1, 2004.” BOA’s brief, at 31. BOA cites as authority for this argument
 
 SouthTrust Bank of Alabama, N.A. v. Webb-Stiles Co.,
 
 931 So.2d 706, 710-11 (Ala.2005) (“A standby letter of credit is essentially equivalent to a loan being made by the issuing bank to
 
 *560
 
 the applicant.”). In
 
 SouthTrust Bank,
 
 this Court included the above descriptive sentence in a discussion regarding not the origination date of a loan, but the use of the fraud exception to block a payment under a letter of credit. Here, by the terms of the agreement, advances on the letter of credit create principal balances upon which interest accrues. It is simply not true, as BOA contends, that this Court in
 
 SouthTrust Bank
 
 held that a loan exists at the time a letter of credit is issued but before any money changes hands.
 

 Citing
 
 Citronelle Unit Operators Committee v. AmSouth Bank, N.A.,
 
 536 So.2d 1387, 1390 (Ala.1988), BOA argues that the issuer of a letter of credit is at risk from the date the letter of credit is issued to the date the letter of credit is returned to it. In
 
 Citronelle,
 
 this Court confirmed the applicant’s liability for fees associated with an open letter of credit during the life of the letter. It is undisputed that the issuer of a standby letter of credit is at risk from the date of issuance of the letter. That, however, is not the question posed here. The question here is not whether BOA was at risk during the life of the letter of credit it issued, but whether BOA sufficiently obtained indemnity for the payments it made pursuant to the letter of credit after the stated expiration of the line-of-credit agreement between BOA and PBC.
 

 Diamond’s entire argument is based on the premise that the loan documents had expired before BOA paid Gateway any moneys under the letter of credit and that, although BOA was obligated to pay, it had not secured indemnification by PBC or by Diamond and Evans, as guarantors, beyond August 1, 2004, the expiration date of the loan documents. We therefore examine the loan documents in the same manner as did the trial court to test whether there was substantial evidence supporting Diamond’s denial of liability, i.e., evidence of “such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.”
 
 West v. Founders Life Assurance Co. of Florida,
 
 547 So.2d 870, 871 (Ala.1989).
 

 The letter of credit, by its terms, was to be automatically extended for one year beyond its original August 1, 2004, expiration date and each subsequent expiration date unless BOA notified Gateway in writing and by secure delivery that it intended not to renew the letter of credit.
 

 In the personal guaranty he signed, Diamond stated that he
 

 “absolutely and unconditionally guarantees to [BOA] the full and prompt payment when due, whether at maturity or earlier ... as follows: A. If this [x] is checked, ... the payment ... of the debt evidenced by or arising out of the following: $200,000 promissory note securing letter of credit of even date and any extensions, renewals or replacements thereof.”
 

 The life of the personal guaranty, by its own terms, is extended to the extent the promissory note is extended.
 

 The promissory note, signed by PBC, on its face states that it was supported by unlimited personal guaranty agreements executed by Diamond and Evans. On page 2, under the heading “OBLIGATIONS INDEPENDENT,” there are two sentences relevant to this issue. The first reads: “Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it.” The other reads: “I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note.”
 
 *561
 
 BOA had the right to extend the note without notice.
 

 The line-of-credit agreement defines the conditions under which BOA was authorized to make loans to PBC, the borrower under that agreement. The line-of-credit agreement reads, in pertinent part:
 

 “You have extended to me a line of credit in the AMOUNT of TWO HUNDRED THOUSAND AND 00/100’S $200,000.00. You will make loans to me ... until 08/01/2004. Although the line of credit expires on that date, I will remain obligated to perform all of my duties so long as I owe money advanced under this agreement, as evidenced by any notes I have signed promising to repay these amounts.
 

 [[Image here]]
 

 “PROMISSORY NOTE: I will repay any advances made according to this line of credit agreement as set out in the promissory note, I signed on 12/01/2003.
 

 [[Image here]]
 

 “MISCELLANEOUS: This line of credit may not be changed except by a written agreement signed by you and me.”
 

 (Capitalization in original.) The line-of-credit agreement lists a “security agreement dated 12/01/2003” and a “guaranty dated 12/01/2003,” but nowhere does it purport to incorporate the terms of those documents into the line-of-credit agreement. It requires a mutually signed writing to change the terms of the agreement, and there is no provision in the document for an extension of the term of the agreement. The line-of-credit agreement, by its terms, did expire on August 1, 2004.
 

 BOA argues that,
 

 “even if the Line of Credit Agreement in this case did not adopt the maturity of the Note, it expressly states that the Bank can make loans to [PBC] until August 1, 2004, and the loan sought to be collected by [BOA] on this action was made on December 1, 2003, when the Letter of Credit was issued.”
 

 BOA’s brief, at 33. As discussed earlier in this opinion, this argument is not supported by
 
 Citronelle, supra,
 
 the case cited by BOA in support of its argument, and it is contrary to the plain language of the loan documents drafted and executed by BOA. The line-of-credit agreement states not that “you have loaned me” or “as of this date you loan me” but that “[y]ou will make loans to me from time to time.” The promissory note provides not that “you have loaned me” or “today you loan me” but that “the principal sum shown above [$200,000] is the maximum amount of principal that I can borrow under this note.” It is obvious that on the date the loan documents were executed BOA merely assumed an obligation to make loans to PBC. It is equally obvious that no moneys were owed by PBC to BOA on August 1, 2004, as the result of draws against the letter of credit, because no draw against the letter was made until August 10, 2004.
 

 Although the line-of-credit agreement expired on August 1, 2004, before BOA made its first payment to Gateway under the letter of credit, the promissory note and the guaranties could be extended without notice, and they are valid as to moneys paid out pursuant to the letter of credit whether or not loans were made under the line-of-credit agreement. The promissory note that requires PBC to repay any payments made under the letter of credit does not rely on the line-of-credit agreement. It merely documents PBC’s agreement to pay BOA $200,000 for advances made on presentment of the letter of credit by Gateway. Even though no moneys were advanced under the line-of-credit agreement while that agreement was in effect, the promissory note and the
 
 *562
 
 guaranties require that BOA be reimbursed for the moneys it paid pursuant to the letter of credit. Further, as BOA argues, reimbursement is required under Alabama law when an issuer pays under a letter of credit. BOA argues:
 

 “When [PBC], Evans and Diamond entered into the transaction for the letter of credit, they submitted to be governed by Alabama law.... Among those laws ... is an Alabama statute imposing liability on [PBC] to reimburse [BOA] immediately for amounts paid under the Letter of Credit regardless of whether there was an effective Note and Line of Credit Agreement. See Ala.Code [1975,] § 7-5-108(i)(l)(2002).”
 

 BOA’s brief, at 36-37. The statute BOA references — § 7 — 5—108(i)(l), Ala.Code 1975 — reads as follows: “(i) An issuer that has honored a presentation as permitted or required by this article: (1) is entitled to be reimbursed by the applicant in immediately available funds not later than the date of its payment of funds.” In its order entering a partial summary judgment in response to BOA’s motion, the trial court stated: “[T]he Court .regards the note, the guaranties, the line of credit agreement and the Letter of Credit as part of one transaction. To the extent reasonably possible, these instruments are to be interpreted and construed together to ascertain the parties’ intention.” The trial court agreed with the holding in
 
 Ci-tronelle,
 
 however, that a letter of credit stands as a distinct and independent instrument as a contract between the issuer and the beneficiary, and that the obligation of the issuer of a letter of credit is independent of the beneficiary’s relationship with the issuer’s customer. The trial court then said: “In this case, however, the other instruments establish crucial ties with the letter of credit.” We agree.
 

 “A letter-of-credit transaction typically includes three
 
 separate
 
 commitments: (1) the applicant’s agreement with the bank, which obligates the bank to issue the letter and obligates the applicant to reimburse the bank; (2) the bank-beneficiary relationship, i.e., the letter of credit itself; and (3) the applicant-beneficiary relationship, i.e., the underlying contract.”
 

 Southern Energy Homes, Inc. v. AmSouth Bank of Alabama,
 
 709 So.2d 1180, 1185 (Ala.1998)(emphasis added). The commitment in question here is the applicant-bank relationship. It is separate and distinct from the two other relationships. This distinction is evidenced by the fact that “ ‘⅛] Beneficiary [under a letter of credit] can in no case avail himself of the contractual relationships existing between the banks or between the Applicant and the Issuing Bank.’ ” 709 So.2d at 1185 (quoting Art. 3, UCP, 1993 Revision, International Chamber of Commerce, Pub. No. 500).
 

 In its order, the trial court discussed the August 1, 2004, expiration date and the provisions for the extension of the letter of credit, the promissory note, and the guaranties. The trial court did not discuss the line-of-credit agreement, which, Diamond argues, is the only document under which a loan to PBC could be made. As noted, that document expired on August .1, 2004, and by its terms, it could be extended only by a writing signed by both parties. On its face, in words drafted by BOA, the line-of-credit agreement states that “[BOA] will make loans to [PBC] from time to time until ... 08/01/2004. Although the line of credit expires on that date, [PBC] will remain obligated to perform [its] duties under this agreement so long as [PBC] owe[s] money advanced according to the terms of
 
 this
 
 agreement” and that PBC “will repay any
 
 *563
 
 advances made according to this line of credit agreement as set out in the promissory note.” (Emphasis added.) Diamond argues that PBC, the signer of the line-of-credit agreement, owed no money under that agreement on August 1, 2004, the date the agreement expired. Although it is true that no money had been advanced during the period the line-of-credit agreement was in effect, Diamond’s reliance on that fact is misplaced. The promissory note, which referred to only the letter of credit and the guaranties, was properly extended by BOA without notice. Diamond’s guaranty, which referred only to the letter of credit and the promissory note, was also automatically extended to cover the promissory note. The line-of-credit agreement is not incorporated into either the promissory note or the guaranty that Diamond signed, and the expiration of the line-of-credit agreement, therefore, has no effect on the obligations set forth in the promissory note and the guaranty document.
 

 “If the terms within a contract are plain and unambiguous, the construction of the contract and its legal effect become questions of law for the court and, when appropriate, may be decided by a summary judgment.
 
 Dill v. Blakeney,
 
 568 So.2d 774 (Ala.1990).”
 
 McDonald v. U.S. Die Casting & Dev. Co.,
 
 585 So.2d 853, 855 (Ala.1991). No party has asserted that the loan documents underlying the transaction to which BOA, Diamond, and PBC are parties are ambiguous. The trial court did not find the documents to be ambiguous. In the promissory note, PBC agreed to pay BOA $200,000 for payments made upon the presentation of the letter of credit. Diamond guaranteed the repayment of money paid out under the “$200,000 promissory note securing [the] letter of credit of even date.” Accordingly, the trial court did not err in entering a summary judgment for BOA, and that judgment is affirmed.
 

 Case No. 1051034
 

 BOA presents three issues in its cross-appeal.
 
 [7]
 
 BOA first asks: “[D]id the trial court err in enforcing the express terms and conditions of the promissory note, line of credit agreement, and guaranties?” In case no. 1051033 we held that the trial court correctly enforced the terms of the promissory note and the guaranties. The line-of-credit agreement expired on August 1, 2004, but its expiration did not compromise Diamond’s obligations under the promissory note and his guaranty.
 

 The next issue BOA presents on cross-appeal is “did the trial court err in failing to award [BOA] interest on the debt as provided by the note?” BOA’s brief, at 6.
 

 The promissory note includes that following provision related to interest:
 

 “INTEREST: I agree to pay interest on the outstanding principal balance from 12/02/2003 at the rate of 4.000% per year until the FIRST RATE CHANGE.
 

 “Variable Rate: This rate may then change as stated below:
 

 
 *564
 
 “Index Rate: The future rate will be 0.000% GREATER THAN the following index rate: PRIME RATE AS DEFINED AS THE HIGHEST RATE PUBLISHED IN THE WALL STREET JOURNAL AS ‘PRIME RATE’ ”
 

 (Capitalization in original.)
 

 The trial court did not address BOA’s request that interest be awarded. Because BOA clearly has a right to interest under the note, we find that the trial court erred in not addressing the issue, and the case is remanded for appropriate consideration of that issue.
 

 Conclusion
 

 The trial court did not err in enforcing the loan documents against Diamond. The trial court did err, however, in not addressing the issue of interest due BOA under the terms of the promissory note. Accordingly, we affirm the judgment of the trial court in case no. 1051033, and in case no. 1051034 we remand the case to the trial court for appropriate proceedings in regard to an award of interest to BOA.
 

 1051033 — AFFIRMED.
 

 1051034 — AFFIRMED IN PART AND REMANDED.
 

 COBB, C.J., and LYONS, WOODALL, STUART, SMITH, BOLIN, MURDOCK, and SHAW, JJ., concur.
 

 [1]
 

 . PBC and Evans filed a separate appeal against BOA; this Court granted PBC and Evans's motion to dismiss that appeal on November 25, 2008. See case no. 1051073.
 

 [2]
 

 . Records of the office of the Alabama Secretary of State indicate that the name was changed on August 29, 2003.
 

 [3]
 

 . Diamond’s wife Shelley was apparently an intervenor and is a party to the cross-claims. Likewise, Evans's wife Denise is also a party to the cross-claims.
 

 [4]
 

 . The security agreement, although a loan document, is not implicated on this appeal.
 

 [5]
 

 . The line-of-credit agreement actually provides that presentment of the letter of credit would allow BOA to refuse to make a loan, but this literal interpretation of the paragraph entitled “Amount” (“You may not refuse to make a loan ... unless one of the following occurs: ... (e) upon presentment ....”) has not been argued.
 

 [6]
 

 . Diamond continues this argument as follows:
 

 “This is precisely why many banks use a reimbursement agreement as a method to document [a letter-of-credit] transaction such as this, because in a reimbursement agreement, a bank obligated the applicant to 'reimburse' the bank whenever a draw is paid under [a letter of credit]. BOA's current practices now employ a reimbursement agreement instead of a combination of a line of credit and a promissory note.... If that agreement had been used in this case, instead of BOA's line of credit/promissory note documentation, then there is little doubt that the two commitments of BOA would have coincided perfectly and permitted BOA to demand payment from [PBC] and the guarantors when [Gateway] drew-down the [letter of credit]. However, because a reimbursement agreement was not used in this case, and because BOA obligated itself under the [letter of credit] in a way that did not coincide with its transactional documents with [PBC] and the guarantors, BOA cannot successfully maintain that its renewal of the [letter of credit] somehow renewed, extended and modified BOA’s independent commitment with [PBC].”
 

 Diamond's brief, at 28-29.
 

 [7]
 

 . One of the issues BOA asked this Court to determine was whether the trial court exceeded its discretion in awarding it less than the total attorney fees actually paid by BOA. The argument presented in support of the request, however, was directed against arguments made by Evans and PBC, entities that are not parties to this case. Our examination of BOA’s notice of appeal to this Court and the associated docketing statement reveal no mention of an issue regarding attorney fees. We therefore pretermit any discussion of the award of attorney fees by the trial court or of BOA's contention that the trial court should have awarded attorney fees under the Alabama Litigation Accountability Act, § 12 — 19— 272, Ala.Code 1975.